SPARKS, APPELLANT, *v.* GEORGE A. SAWAYA, M.D., INC., APPELLEE.

(No. 82AP-960—Decided April 12, 1983.)

*Ms. Marcia E. Palof* and *Ms. Ruth Stoltzfus Jost,* for appellant.

*Mr. Philip R. Bradley* and *Mr. Richard D. Topper,* for appellee.

McCORMAC, J. Donna Sparks, plaintiff-appellant, filed a complaint against her physician, George Sawaya, defendant-appellee, seeking compensatory damages of $260 and punitive damages of $2,600. She alleged that Dr. Sawaya accepted her as a welfare recipient to deliver her baby and that he breached his provider agreement by requiring her to pay $260 of his bill for which she sought reimbursement, and by refusing to file to obtain medicaid benefits for her to which she was entitled.

Dr. Sawaya answered, denying that he had accepted Sparks as a welfare patient. He counterclaimed, seeking $426 damages for the unpaid part of his medical bill.

Trial by jury was waived and the case was tried to the court who ruled for defendant in regard to the complaint and for defendant on his counterclaim granting $426 damages against plaintiff.

Plaintiff has appealed, setting forth the following assignments of error:

"I. The trial court erred in finding that the appellant owed $426.00 and costs to appellee; such a finding is against the manifest weight of the evidence and contrary to law since it is in violation of the Federal and State regulations which govern the medicaid program as well as in violation of the provider agreement which appellee had with the Ohio Department of Public Welfare for a medicaid provider to charge a medicaid patient.

"II. The trial court erred in dismissing appellant's action and failing to find that appellee owed a refund of $260.00 plus the costs of the action to appellant;

such a finding is against the manifest weight of the evidence and contrary to law since it is in violation of the Federal and State regulations which govern the medicaid program as well as in violation of the provider agreement which appellee had with the Ohio Department of Public Welfare for a medicaid provider to charge a medicaid patient."

Dr. Sawaya had been plaintiff's physician for several years prior to March 20, 1979, when at a visit to his office she was discovered to be pregnant. The testimony of Dr. Sawaya's nurse, who interviewed plaintiff at that time, was that she was to be a private patient and there was no indication that she would be a welfare recipient entitled to medicaid benefits. While plaintiff's testimony was that she had told the nurse she intended to apply for medicaid, the trial court could properly determine that the initial arrangement was that Sparks was accepted as a private patient.

There is no doubt that prior to July 5, 1979, Sparks applied for and was found eligible for medicaid benefits and that she notified defendant's office of that fact. On July 5, 1979, she received a letter from defendant, which read as follows:

"It is our office policy in regard to Welfare claims that the patient *must* pay the entire bill before delivery. We will file Welfare after delivery. If Welfare pays your claim we will refund what they pay to you. Often, however, they pay us nothing at all, at the most, they pay us about half of the total.

"Your initial agreement with us was that you would pay all of your bills *before* delivery. You agreed to this on your first Ob. visit.

"The hospital will accept Welfare for your hospital bill, therefore you won't need to pay them at delivery.

"We hope you can understand our reasons for this policy. That is why we discuss Ob. fees on your first visit."

At the time that the letter of July 5, 1979 was sent, Sparks had made no payments to Dr. Sawaya. Prior to delivery of the baby on November 19, 1979, she paid $260 to him. In March 1980, Dr. Sawaya notified Sparks that he would not file for welfare benefits after having discovered that it was illegal and contrary to his provider agreement to file for welfare benefits while accepting payment from the welfare recipient and to receive payments from a welfare patient in addition to the medicaid payment.

There is no dispute but that the medicaid regulations and the provider agreement both require the provider to accept as full payment the amount received from medicaid if the patient is accepted as a medicaid patient. Additional payments cannot be accepted from the recipient or her family after the patient is accepted as a medicaid patient, and the patient cannot be billed for additional amounts in excess to that received from medicaid. The provider may, however, accept a medicaid recipient solely as a private patient, in which case payment can be obtained from that person as usual but in that event there may be no filing for medicaid benefits. The patient may not file for medicaid benefits. Only the provider can do that.

It appears clear that Dr. Sawaya initially intended to accept Sparks only as a private patient and that he did not want to be involved with her as a welfare medicaid recipient for two reasons: (1) he would receive less than his usual fee, and (2) his office, being a small office, did not have the capacity to deal with the paperwork and regulations for medicaid claims. However, Sawaya had signed a provider agreement with medicaid and he was charged with the knowledge of their regulations. There is no doubt that prior to July 5, 1979, Sawaya was aware that Sparks had been found eligible for medicaid benefits and that on that date Sawaya agreed that he would file for medicaid benefits for her after the time of delivery of her baby under the conditions of the original agreement that Sparks pay

all of his bills before delivery and that her only benefit from his filing for medicaid for her would be that whatever medicaid paid would be refunded to her. There is no indication in the record that Sawaya intentionally violated his provider agreement. He simply was unaware that his agreement with Sparks, as reflected in the letter of July 5, 1979, was a breach of medicaid regulations and his provider agreement. When he was so informed in March 1980, Sawaya attempted to rescind his agreement with Sparks to file for medicaid benefits, and to return to the agreement of initial employment that Sparks was to be a private pay patient.

The act of Dr. Sawaya of agreeing to file for medicaid benefits for Sparks on July 5, 1979, regardless of his motivation of good faith, constituted, as a matter of law, an acceptance of her as a medicaid patient. It was an act inconsistent under the provider agreement and medicaid regulations with his prior acceptance of Sparks solely as a private pay patient. Since at that point Sawaya had accepted her as a medicaid patient, he was bound by the medicaid regulations and the terms of his provider agreement, which were that after that date he could not collect any payments from her or her family and that he was required to accept as full payment of his bill the amount received from the welfare department.

Dr. Sawaya had received no payment prior to July 5, 1979. Hence, he was required to refund to Sparks the $260 that he accepted from her after July 5, 1979, and he was required to file for and accept medicaid benefits as full payment of his fee thereafter.

Plaintiff's assignments of error are sustained. The trial court's judgment rejecting Sparks' claim for reimbursement of the $260 she paid to Dr. Sawaya was contrary to law and against the manifest weight of the evidence, as was the judgment for Dr. Sawaya for $426.

The judgment of the trial court is reversed. The case is remanded to the trial court with instructions to enter judgment for Sparks in the amount of $260 and costs on her complaint and to enter judgment for Sparks on defendant's counterclaim.

*Judgment reversed and case remanded.*

WHITESIDE, P.J., and REILLY, J., concur.