Teresa BARNEY and Randy Barney,
Plaintiffs–Appellants,

Bonita Waldron, on behalf of themselves
and others similarly situated,
Intervenor–Appellant,

v.

HOLZER CLINIC, LTD.,
Defendant–Appellee.

No. 95–4263.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 24, 1996.

Decided April 8, 1997.

Edward A. Icove (argued), Lustig, Icove & Lustig, Cleveland, OH, Timothy J. Foran (briefed), Gary M. Smith, and Ann Sessums Rubin, Southern Ohio Legal Services, New Philadelphia, OH, for Appellants.

David M. Selcer (argued and briefed) and Joseph C. Devine, Baker & Hostetler, Columbus, OH, for Appellee.

Thomas W. Osborne (briefed), American Association of Retired Persons, Wsahington, DC; John S. Marshall, Spater, Gittes, Schulte & kolman, Columbus, OH; and Jack R. Bier-

ig (briefed), Sidley & Austin, Chicago, IL, for Amici Curiae.

Before: WELLFORD, DAUGHTREY, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

This class action presents the novel question of whether the Equal Credit Opportunity Act's antidiscrimination provisions prohibit a medical clinic from refusing to accept new patients whose bills will be paid by Ohio's Medicaid program. For the reasons discussed below, we hold that they do not. We do, however, believe that clear violations of Federal Rule of Civil Procedure 23 demand that we take the unusual step of addressing sua sponte the scope of the class certified below.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs–Appellants Teresa and Randy Barney and intervenor-appellant Bonita Waldron [hereinafter "plaintiffs"] are all residents of Vinton County, Ohio, who receive Aid to Families with Dependent Children and are therefore eligible for medical treatment under Medicaid. Defendant–Appellee Holzer Clinic is a "for-profit physician's organization which generally provides non emergency medical services and treatment in various Ohio and West Virginia counties." Appellee's Br. at 3. The clinic presently has a policy under which it will accept new patients under the Medicaid program only if those patients live in counties in which Holzer has clinics. Holzer Clinic does not have any facilities in Vinton County and admits that "[p]laintiffs were not accepted as patients because they were non-emergency new Medicaid patients who live in Vinton County." J.A. at 22–23 (Memorandum Contra Plaintiffs' Motion for Class Certification).

Plaintiffs brought this action in federal district court claiming that Holzer, by refusing to treat them, had denied them incidental credit because they received public assistance, in violation of the Equal Credit Opportunity Act, Pub.L. No. 90–321, 82 Stat. 146 (1968) [hereinafter ECOA] and amendments, as interpreted by the Federal Reserve

Board's Regulation B (Equal Credit Opportunity), 12 C.F.R. § 202. The complaint requested injunctive and declaratory relief as well as compensatory and punitive damages on behalf of a broad plaintiff class under the ECOA and pendent state-law claims. The district court certified the class under FED. R.CIV.P. 23(b)(2), J.A. at 50, and then, after both parties had briefed the merits of the case, granted Holzer's motion to dismiss for failure to state a claim under the ECOA and dismissed the pendent state law claims without prejudice, *id.* at 106–07. Plaintiffs appeal.

## II. JURISDICTION

The district court had jurisdiction under 15 U.S.C. § 1691e(f) (providing jurisdiction in ECOA cases) and 28 U.S.C. § 1367(a) (supplemental jurisdiction over pendent state law claims). We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

## III. DISCUSSION

### A. ECOA and Medicaid

■ The ECOA makes it "unlawful for any creditor to discriminate *against any applicant*, with respect to any aspect of a credit transaction ... because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2) (emphasis added). Plaintiffs argue that Holzer is a creditor[1] under the ECOA because it regularly extends "incidental credit" to patients by providing them with medical services and billing them later.[2] They further argue that because Holzer will treat privately insured residents of Vinton County, but will not accept new Medicaid patients from that county, it thereby discriminates against them because part of their income derives from public assistance.[3] We need not address ei-

ther of these propositions, however, because plaintiffs are not "applicants" under the ECOA and therefore cannot invoke the Act's protections.

The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Regulation B provides a slightly different definition: "Applicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e). Both definitions refer to "credit," which itself has a statutory definition: "[T]he right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its [sic] payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). Again, Regulation B differs slightly: "Credit means the right granted by a creditor to an *applicant* to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor."[4] 12 C.F.R. § 202.2(j) (emphasis added).

Plaintiffs do not argue that they were granted a right "to defer payment of a debt" or to "incur debt and defer its payment"; indeed, they seem to concede that if debt were a prerequisite for the ECOA's protections they would fall outside the Act's scope. *See* Appellants' Br. at 22 ("[P]laintiffs were 'applicants' under the ECOA, irrespective of whether the requested arrangement would or would not have resulted in a traditional debt relationship with Holzer."); *id.* at 26 ("Only the first two alternatives specify 'debt' as a

1. "The term 'creditor' means [inter alia] any person who regularly extends, renews, or continues credit...." 15 U.S.C. § 1691a(e). *Accord* 12 C.F.R. § 202.2(*l*).

2. "If a service provider (such as a hospital [or] doctor ... ) allows the client or customer to defer the payment of a bill, this deferral of debt is credit for purposes of the regulation...." 12 C.F.R. § 202 Official Staff Interpretation § 202.3(c).

3. "[P]hysicians, hospitals, and others to whom the benefits are payable need [to] consider Medicare and Medicaid as public assistance." 12 C.F.R. § 202 Official Staff Interpretation § 202.2(z)(3).

4. The Board's definition serves to make clear that applicants who have yet to be granted any credit, and who thus may not be debtors, are nonetheless covered by the Act.

necessary element. The third alternative does not; it requires only the deferral of 'payment,' not the existence of 'debt.'"). They argue instead that the requisite credit transaction occurs when Holzer extends to patients a right to "purchase ... services and defer payment therefor." *Id.* at 27 ("If the right to purchase property or services and defer payment therefor does not constitute 'credit' irrespective of whether debt will be created, then this criterion could be satisfied only where debt *is* created."). Plaintiffs, however, have not asked Holzer to give them a right to purchase anything or to defer payment. Rather, as discussed below, they have asked the clinic to provide them with medical services under an agreement between Holzer and the State of Ohio, to which plaintiffs are third-party beneficiaries. This is not a request for credit under the ECOA, and that Act's protections do not apply.

Congress created Medicaid[5] in 1965 to provide medical services to families and individuals who would otherwise not be able to afford necessary care. *See* 42 U.S.C. § 1396; *Pennsylvania Med. Soc'y v. Snider,* 29 F.3d 886, 888–89 (3d Cir.1994). The federal law allows the states considerable discretion in administering the program; so long as a state's program meets federal statutory and regulatory standards, the federal government provides the bulk of the program's funding. *See* 42 U.S.C. § 1396(b); *Pennsylvania Med. Soc'y,* 29 F.3d at 888–89. *See generally* 42 U.S.C. § 1396a (standards).

Ohio has chosen to participate in the Medicaid program. *See* OHIO REV.CODE.ANN. § 5111.01 (Banks–Baldwin West 1996). Under federal law, medical service providers must accept the state-approved Medicaid payment as payment-in-full, and may not require that patients pay anything beyond that amount. 42 C.F.R. § 447.15 ("A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individu-

al."); *Rehabilitation Ass'n of Virginia, Inc., v. Kozlowski,* 42 F.3d 1444, 1447 (4th Cir. 1994) ("Service providers who participate in the Medicaid program are required to accept payment of the state-denoted Medicaid fee as payment in full ... and may not attempt to recover any additional amounts elsewhere."), *cert. denied,* —— U.S. ——, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995); *Pennsylvania Med. Soc'y,* 29 F.3d at 889; *New York City Health and Hosps. Corp. v. Perales,* 954 F.2d 854, 856 (2d Cir.), *cert. denied,* 506 U.S. 972, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992). *See* 42 U.S.C. § 1320a–7b(d) (prohibiting Medicaid service providers from charging "money or other consideration at a rate in excess of the rates established by the State").

Federal law allows states to pay either the provider or, in some circumstances, the patient. *See* 42 U.S.C. § 1396d(a) (allowing Medicaid payment *"for* individuals, and ... *to* individuals" who meet certain eligibility requirements) (emphasis added); 42 C.F.R. § 447.25(a), (b) (implementing 42 U.S.C. § 1396d "by prescribing requirements applicable to States making direct payments to certain recipients for physicians' or dentists' services"); 42 C.F.R. § 447.10(d)(2). In Ohio, however, all Medicaid payments flow from the state directly to the medical provider; a provider is absolutely barred from requesting any payment from patients for treatment provided under the program. *See* OHIO ADMIN.CODE § 5101:3–1–131(A) ("The department's payment constitutes payment-in-full for any covered service. The provider may not bill the recipient for any difference between that payment and the provider's charge. The provider may not charge the recipient any copayment, cost-sharing, or similar charge. The provider may not charge the recipient a down payment, refundable or otherwise."); *Id.* § 5101:3–1–60(A); *Sparks v. Sawaya,* 9 Ohio App.3d 275, 459 N.E.2d 901, 903 (1983) ("Additional payments cannot be accepted from the recipient or her family after the patient is accepted as a medicaid patient, and the patient cannot be billed for additional amounts in excess to that received from medicaid.... The patient

---

5. Title XIX of the Social Security Act. *See* Social Security Amendments of 1965, Pub.L. No. 89–97, § 121, 79 Stat. 286, 370–80 (1965).

may not file for medicaid benefits. Only the provider can do that."). Medical providers may not bill patients for treatment under the program unless they have explicitly agreed prior to treatment that the patient will personally be liable, even if the providers themselves cannot get reimbursement from the state. OHIO ADMIN.CODE. § 5101:3–1–131(C), (D). *Cf. In re Helman,* 61 Ohio Misc.2d 382, 579 N.E.2d 542, 544 (Ct.Cl.1989) (applying exception to law).

Under Ohio law, then, Holzer Clinic could never grant patients requesting medical services under Medicaid the right to purchase those services and defer payment therefor. Patients who receive treatment under Medicaid are not granted a right to defer payment: where there is no duty to pay, there cannot be a right to defer payment. Similarly, although the ECOA does not define "purchase," it is clear that any definition of the term must include some sort of exchange between the parties as an element. Holzer and the state have entered into a provider agreement, a "contract between the Ohio department of human services and a provider of medical assistance services," under which Holzer provides services to Medicaid-eligible patients and then receives reimbursement from the state. OHIO ADMIN.CODE § 5101:3–1–172. *See id.* § 5101:3–1–60; *Linton by Arnold v. Commissioner of Health and Env't,* 65 F.3d 508, 520 (6th Cir.1995) (characterizing Medicaid recipients as "third-party beneficiaries to such contracts"), *cert. denied,* —— U.S. ——, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). The provision of medical treatment under this program is not a credit transaction, either under the technical language of the ECOA or in the more common sense of the term, any more than is a court-appointed attorney's agreement to represent an indigent defendant. *See* 18 U.S.C. § 3006A(d) (providing for reimbursement of court-appointed attorneys). *Cf. United States v. Baylor Univ. Med. Ctr.,* 736 F.2d 1039, 1049 (5th Cir.1984) ("Called 'assistance' during the debates and in the statutes, Medicaid is in no way comparable to an insurance program, but closely resembles in its financial structure such ... programs as the school lunch program, and the Hill–Burton Program for hospital construction, in which federal assistance given to the states was distributed by the states to local school districts or hospital construction projects.") (citations and footnote omitted), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985). Plaintiffs therefore do not state a claim under the Act.

■ We have resolved this issue on rather technical grounds because plaintiffs advanced technical arguments which merited a detailed discussion. We note, however, that even if plaintiffs were within the scope of the ECOA we would be reluctant to find that Holzer's refusal to provide them Medicaid-reimbursed services violated federal law. If the ECOA prohibited Holzer from denying medical services under Medicaid to a particular class of recipients, it would seem similarly to prohibit any medical provider from ever refusing to provide services under Medicaid.[6] The extremely detailed federal Medicaid statute does not require a particular hospital to participate in the Medicaid program. *See Linton,* 65 F.3d at 515 (referring to "voluntary nature of provider participation in Medic-

---

6. Plaintiffs argue that a decision in their favor could apply to medical providers who have chosen to participate in the Medicaid program without requiring that all providers take part in the program. Appellants' Br. at 34–35. Their argument is, first, that such providers who do not participate in Medicaid may not receive payments under the program, are therefore not "physicians, hospitals, and others to whom [Medicaid] benefits are payable," and thus need not "consider ... Medicaid as public assistance," 12 C.F.R. § 202.2 Official Staff Interpretation § 202.2(z)(3). Such a narrow interpretation would allow doctors who do not participate in Medicaid or Medicare to refuse to extend incidental credit to patients covered by those pro-

grams, and we would therefore reject it as incompatible with ECOA's broad remedial goals. Plaintiffs argue in addition that the ECOA does not require that medical providers offer incidental credit, only that if they do so they must not discriminate. Therefore, they argue, a medical provider that refused to extend any credit under Medicaid would not violate the ECOA. This argument, too, is unconvincing. If, as plaintiffs argue, a Medicaid transaction implies the extension of incidental credit, then a doctor who billed any patients, rather than demanding payment at the time of treatment, could not categorically exclude Medicaid recipients from such incidental credit, and would thus have to accept all such patients.

aid"); *New York City Health and Hosps. Corp. v. Perales*, 954 F.2d 854, 856 (2d Cir. 1992) ("Those doctors and hospitals *who are willing to treat Medicaid patients* must agree to accept the designated Medicaid rate ....") (emphasis added), *cert. denied*, 506 U.S. 972, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992); *Hennessey v. Berger*, 403 Mass. 648, 531 N.E.2d 1268, 1269 (1988) ("An examination of Federal and [Massachusetts] law indicates that a physician's participation in the Medicaid program is voluntary."). Even those providers that do choose to serve patients under Medicaid need not accept all such patients. *See* 42 U.S.C. § 1396a(a)(23) ("[A]ny individual eligible for medical assistance ... may obtain such assistance from any institution ... that is ... *who undertakes to provide him such services* ....") (emphasis added); 42 C.F.R. § 431.51(b)(1) ("[A] recipient may obtain Medicaid services from any institution ... *[w]illing to furnish them to that particular recipient*.") (emphasis added). The "Medicaid program ... is predicated upon provider compliance with the Medicaid Act in exchange for compensation." *Linton*, 65 F.3d at 515. *See* 42 U.S.C. § 1396a(a)(30)(A) (requiring that state payments be "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area"). Because the remuneration provided under Medicaid is often significantly less than that provided by private insurers or Medicare, *Pennsylvania Med. Soc'y*, 29 F.3d at 889, health care providers, either in the interest of higher profits or merely to remain solvent, sometimes limit the number of Medicaid patients they will accept. So long as these strategies do not otherwise violate the Medicaid statute or other federal antidiscrimination laws they are not in themselves prohibited. Because, however, Holzer's policy of refusing to accept under the Medicaid program new patients from Vinton County does not implicate the ECOA, we need not decide whether, if it did, the ECOA and Medicaid

statutes would be in such tension that one would have to give way to the other.

## B. Sanctions

■ Holzer has moved for sanctions [7] for the filing of a frivolous appeal under Federal Rule of Appellate Procedure 38 [8] and 28 U.S.C. §§ 1912 & 1927. We deny the motion.

Rule 38 allows a court of appeals to award appellees "just damages and single or double costs" in a frivolous appeal. We have recognized that an appeal may be frivolous if "it is obviously without merit *and* is prosecuted for delay, harassment, or other improper purposes." *NRLB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir.1987) (emphasis added) (citation omitted). Pursuant to 28 U.S.C. § 1927, a court may impose sanctions personally on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" where the attorney's conduct amounts to "a serious and studied disregard for the orderly processes of justice." 28 U.S.C. § 1927; *United States v. Ross*, 535 F.2d 346, 351 (6th Cir.1976). Section 1912 allows an appellate court that affirms a judgment to impose "just damages for [appellee's] delay, and single or double costs." All of these provisions allow, but do not require, the court to impose sanctions.

We will usually impose Rule 38 and § 1927 sanctions only where there was some improper purpose, such as harassment or delay, behind the appeal. *Cincinnati Bronze*, 829 F.2d at 591 (improper purposes is component of frivolity); *Ross*, 535 F.2d at 349 (intent to harass, or at a minimum reckless disregard of duty, is necessary for personal liability of attorney under § 1927). *See Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). There is nothing to suggest that appellants are attempting to harass Holzer Clinic. Nor can they be accused of prosecuting this appeal for the purpose of delay—there is nothing for them to delay. Holzer asserts that appellants' improper purpose is that they are using "public funds for social

---

7. The request was properly made in a separately filed motion. *See* Fed.R.App.P. 38.

8. Although Holzer's motion cites Rule 38 of the Federal Rules of Civil Procedure—which addresses the right to a jury trial—we assume counsel intended to refer to the appellate rule.

engineering purposes." Appellee's Motion for Sanctions at 7, 8. This seems to us to acknowledge that plaintiffs' purpose was to prevail on the merits and thereby secure relief for their clients. This is not an improper purpose.

Absent an improper purpose, this is also not the sort of appeal which merits sanctions under any of these provisions. The central issue was one of first impression. *See Overnite Transp. Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789, 794–95 (7th Cir.1983) (denying sanctions under § 1927 because issues were of first impression and had "an arguable factual basis"). *Cf. Martin v. Commissioner of Internal Revenue,* 756 F.2d 38, 41 (6th Cir.1985) ("[C]ourt will not hesitate to award damages [under FED.R.APP.P. 38 and § 1912, inter alia,] when the appeal is frivolous, ... involving an issue or issues already 'clearly resolved.'") (citation omitted). A decision in favor of appellants would not be the first time that a court of appeals had applied the ECOA to transactions that do not seem to be a credit transaction. *See Brothers v. First Leasing,* 724 F.2d 789, 796 (9th Cir.) (applying ECOA to consumer leases, despite evidence that Congress had rejected such an application), *cert. denied,* 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). Nor would it be the first time a circuit court has found that Medicaid recipients are protected by antidiscrimination provisions which appear in seemingly inapplicable statutes. *See United States v. Baylor Univ. Med. Ctr.,* 736 F.2d 1039, 1040 (5th Cir.1984) (holding, as matter of first impression, that 29 U.S.C. § 794 prohibits hospitals which receive Medicaid reimbursement from discriminating against disabled persons), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985). Although appellants' arguments in this case were not ultimately persuasive, they were far from frivolous and do not warrant sanctions.

## C. Class Certification

Although neither party has raised the issue on appeal, we believe that the district court's failure to modify the scope of the class when it became clear that the named plaintiffs were not appropriate representatives of such a broad class constitutes plain error [9] which may affect the rights of non-parties. We therefore find it necessary to explain more precisely the scope of our holding on the merits and to amend sua sponte the class certification to conform to the arguments that the parties have made in this court and below. *See Hines v. United States,* 971 F.2d 506, 508–09 (10th Cir.1992) (noting that issues which "substantially implicate important concerns beyond those of the parties to an action" may merit sua sponte consideration).

The district court in its original order certified a class "defined as all persons whose source of payment is public assistance and who are, have been, or will in the future be applicants for credit, as that term is defined by 12 C.F.R. § 202.2, from defendant Holzer Clinic, Inc." J.A. at 50. However, the court then held, as do we today, that plaintiffs' case must fail because they are not applicants for credit under the ECOA. This leaves persons whose positions are identical to the plaintiffs' outside the scope of the class but includes potential plaintiffs who *are* applicants for credit and therefore able to invoke the ECOA's protections, a result that could frustrate both Holzer Clinic's interest in finality and also the broader interests in enforcement of the ECOA.[10]

We could, of course, simply affirm the dismissal of plaintiffs' claims and hope that future litigation will correct the certification error. However, in the past we have not been content to follow such a narrow path. In *Bowen v. General Motors Corp.,* 685 F.2d 160 (6th Cir.1982), for example, we affirmed a dismissal of class civil rights claims only

---

9. We usually review a district court's class certification for abuse of discretion. *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889, 895 (6th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 173, 136 L.Ed.2d 114 (1996). A district court that either uses the wrong legal standard or misapplies the correct legal standard abuses its discretion. *Id.*

10. The usual principles of both res judicata (claim preclusion) and collateral estoppel (issue preclusion) apply in class actions. *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 874, 104 S.Ct. 2794, 2798–99, 81 L.Ed.2d 718 (1984).

after remanding the case to the district court to determine whether the plaintiffs had adequately represented the class. *Id.* at 161, 164. The district court's duty to assay whether the named plaintiffs are adequately representing the broader class does not end with the initial certification; as long as the court retains jurisdiction over the case "it must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. North Mississippi Med. Ctr., Inc.,* 586 F.2d 457, 462 (5th Cir.1978). *Accord Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir.1986); *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1124 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). *See Burns v. United States R.R. Retirement Bd.,* 701 F.2d 189, 191–92 (D.C.Cir.1983) ("The original definition and certification ... may require alteration or amendment as the case unfolds.") (Ruth Bader Ginsburg, J.). As the Fourth Circuit has noted,

> the [district] court must be prepared under Rule 23(c)(1) to alter or amend [the class certification] if the course of trial on the merits reveals the impropriety of class action maintenance. And this of course necessarily implies that a reviewing court must be prepared to find error in a trial court's failure to alter or amend—to "decertify" the class action—if on the whole record, including the evidence adduced on trial, it appears to the reviewing court that this was the proper course.

*Stastny v. Southern Bell Tel. and Tel. Co.,* 628 F.2d 267, 276 (4th Cir.1980). Our review of the record—which includes the memoranda filed below regarding certification—leads us to believe that the class is overly broad. The suit was litigated and decided under Ohio Medicaid law: neither party has given us any indication of whether medical assistance programs in other states might lead to a different result. This suggests both that the named plaintiffs' claims are not typical of those of the enormous class certified and that they could not adequately represent such a class. *See In re American Med. Sys., Inc.,* 75 F.3d 1069, 1083 (6th Cir.1996) ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."). Since the parties have focused entirely on Ohio Medicaid-eligible plaintiffs, the certification of a nationwide class defined as "all persons whose source of payment is public assistance" is overbroad. Our judgment is limited to a determination that persons requesting treatment under the Ohio Medicaid program are not *ipso facto* applicants for credit under the ECOA.[11]

As discussed above, the named plaintiffs are not in the end even members of the class that was certified. By holding that they are not applicants for credit we have held in effect that they are not members of the class that was defined in terms of "applicants for credit." We therefore believe it is appropriate for us to amend the class certification so that the class includes the named plaintiffs and those similarly situated. *See Johnson v. Uncle Ben's, Inc.,* 628 F.2d 419 (5th Cir.1980) (holding sua sponte that dismissal of class's claims below would be without prejudice for part of class), *vacated,* 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290, *on remand,* 657

---

11. We recognize that we do not here determine the res judicata effect of this judgment; that task is for the court in a subsequent action in which previous adjudication is raised as a defense. Fed.R.Civ.P. 23(c)(3) Advisory Committee Notes (1966 Amendment); Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure § 1789 p. 245 (1986). However, neither this principle nor the fact that the absent class members may later collaterally attack a faulty judgment by challenging the adequacy of class representation, *see Shults v. Champion Int'l Corp.,* 35 F.3d 1056, 1058 (6th Cir.1994), means that a district court should issue, or that we should blithely uphold, such a judgment. *See* Fed.R.Civ.P. 23(c)(3) Advisory Committee Notes (1966 Amendment) ("The court ... in framing the judgment in any suit brought as a class action, must decide what its extent or coverage shall be, and if the matter is carefully considered, questions of res judicata are less likely to be raised at a later time and if raised will be more satisfactorily answered."); *Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir.1986) (affirming district court's post-verdict decertification of class on basis of inadequate representation); *Stastny v. Southern Bell Tel. and Tel. Co.,* 628 F.2d 267, 276 (4th Cir.1980) (observing that reviewing court may "find error in a trial court's failure to alter or amend to 'decertify' the class action").

F.2d 750 (5th Cir.1981); *Grigsby*, 586 F.2d at 461–62 (affirming dismissal of class action but remanding—apparently sua sponte—for district court to reconsider scope of class in light of evidence presented). *See also Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975) (Where named plaintiff who was within the class definition at the time of certification is no longer a class member, "the focus of examination [shifts] from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.'") (quoting Rule 23(a)). This modification merely brings the formal certification into conformity with the class definition that the parties and the court below believed to have been certified. *Cf. EEOC v. Detroit Edison Co.*, 515 F.2d 301, 310 (6th Cir.1975) (noting that it would be improper for a district court to expand class certification after "the parties proceed to trial on the basis" of a narrower class), *vacated*, 431 U.S. 951, 951, 97 S.Ct. 2668, 2669, 53 L.Ed.2d 267 (1977), *overruled on other grounds, Harris v. Richards Mfg. Co.*, 675 F.2d 811, 814 (1982). Accordingly, we hold that the class in this case comprises all persons who do or will *assert* that they are applicants for credit under the ECOA from defendant Holzer Clinic by virtue of their participation in the Ohio Medicaid program.[12]

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM the judgment of the district court as to the merits. The class certification is MODIFIED as stated above to conform to the arguments presented, and Holzer's motion for sanctions is DENIED. AFFIRMED as MODIFIED.

---

**12.** Strict adherence to what courts and commentators have taken to be hortatory, rather than descriptive, language in Rule 23(c)(3) that the judgment in such class actions "shall include and describe those whom the court finds to be members of the class" would perhaps eliminate this type of problem in the future by forcing courts to reexamine the class certification when entering judgment. *Compare Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir.1987) ("[T]he failure of the district court to designate in the judgment the class thereby bound may be deemed an oversight or omission subject to correction pursuant to Rule 60(a)."); *Young v. Katz*, 447 F.2d 431, 435 (5th Cir.1971) (remanding to specify class in judgment); Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure § 1789 p. 243 (1986) ("The failure to specify the members of the class in the judgment at the time it is entered is not a fatal error and the case simply can be remanded to remedy the defect.") *with* Fed.R.Civ.P. 23(c)(3) Advisory Committee Notes (1966 Amendment) ("The judgment in a class action maintained as such to the end will embrace the class, that is, in a [(b)(2)] class action, ... those found by the court to be class members....").