LAYTON PHYSICAL THERAPY COMPANY, INC., Appellee,

v.

PALOZZI et al., Appellants.

[Cite as *Layton Physical Therapy Co., Inc. v. Palozzi*,
149 Ohio App.3d 332, 2002-Ohio-4703.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2001–L–229.

Decided Sept. 5, 2002.

John W. Shryock, for appellee.

Timothy S. Deeb, for appellants.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} Appellants, Fred, Joanne, and Jeannine Palozzi, appeal from the decision of the Painesville Municipal Court, adopting the decision of the magistrate,

which rendered judgment against appellants in favor of appellee, Layton Physical Therapy Co., Inc., in the amount of $3,606.05. For the following reasons, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for proceedings in accordance with this opinion.

{¶ 2} By way of background, on December 19, 2000, appellee filed a complaint against Fred and Joanne Palozzi, parents and best friend of Jeannine Palozzi, a minor, for monies due and owing in the amount of $4,725.81 for physical therapy services rendered to Jeannine. According to the complaint, on December 22, 1997, "[appellants] contracted with [appellee] for the performance of various physical and occupational therapy services." Based on this particular contract, appellee allegedly furnished these services to Jeannine but had received no compensation from appellants. As such, appellee claimed that appellants had been unjustly enriched by failing to pay for the therapy services rendered.

{¶ 3} Acting pro se, appellants filed an answer alleging that Jeannine had health insurance through the Medicaid program, and that appellee was so advised on the first visit. Then, according to appellants, approximately three or four weeks into the therapy sessions, they were informed by appellee that it could no longer render treatment to Jeannine because Medicaid would not cover any additional treatments.

{¶ 4} On March 30, 2001, appellee filed a motion to join Jeannine as a new party defendant and sought to amend the complaint. On April 2, 2001, the trial court granted appellee's motion, and the complaint was amended with the following supplement: "At the commencement of the performance of therapy services, [Jeannine] was a minor. During the course of treatment, [Jeannine] became emancipated." The remainder of the amended complaint realleged the allegations contained in the initial complaint. No answer was filed in response to the amended complaint.

{¶ 5} This matter came on for a trial before the magistrate on July 25, 2001. According to the magistrate's order, all parties appeared for trial and evidence was taken. Upon consideration, the magistrate ordered each side to submit the following: (1) any information on the Medicaid reimbursement rate for the services rendered by appellee between December 1997 and February 1998, and (2) any law addressing Jeannine's liability.

{¶ 6} On August 14, 2001, appellee filed a trial brief submitting that the Medicaid rate for the first forty-eight treatments rendered to Jeannine totaled $1,227.98, while all subsequent treatment provided thereafter amounted to $2,378.07.

{¶ 7} Appellants countered by submitting their trial brief on September 24, 2001. In relevant part, appellants urged that in accordance with Ohio Adm.Code

5101:3–1–131, once an individual is accepted as a Medicaid patient, it is the provider's responsibility to seek payment from Medicaid and follow up on any rejected claims. From this appellants concluded that appellee could not seek payment from the recipient.

{¶ 8} Upon consideration, on September 27, 2001, the magistrate made the following factual findings:

{¶ 9} "[Appellant] Jeannine Palozzi was injured in an automobile accident when she was 16 years old. She was referred to [appellee] for physical therapy.

{¶ 10} "At the time of her referral, Jeannine was living with her parents, [appellants] Fred and Joanne Palozzi. The family had health insurance through Medicaid and [appellee] was so advised.

{¶ 11} "*Medicaid allowed Jeannine forty-eight (48) treatment modules. After these modules were provided, [appellee] advised Jeannine that it could no longer treat her. She then advised [appellee] that she needed further treatment, and expected Westfield Insurance, the carrier for the wrong-doer in the accident to pay the bills. [Appellee] confirmed coverage and continued to treat Jeannine.*

{¶ 12} "After the treatment was complete, Jeannine, then an adult, received a settlement for the accident claim. [Appellee] received no payment at the time, or at anytime thereafter.

{¶ 13} "Had [appellee] been paid by Medicaid, they would have received $1,227.98 for the first 48 service modules, not the $2,347.74 billed by [appellee] to [appellants]. [Appellants] would have had to repay Medicaid the $1,227.98 from the settlement received. [Appellant] Jeannine Palozzi has retained this $1,227.98, and none of the [appellants has] paid any of the charges for services after the first 48 modules totaling an additional $2,378.07.

{¶ 14} "It is reasonable to infer that the services rendered by [appellee], and the billing thereof, were considered by Westfield Insurance in arriving at the settlement paid Jeannine Palozzi." (Emphasis added.)

{¶ 15} Upon considering the evidence adduced at the hearing, the magistrate recommended judgment in favor of appellee and against appellants in the amount of $3,606.05; that is $1,227.98 (the Medicaid rate for the first forty-eight treatment modules) plus $2,378.07 (the monetary value for treatment rendered after the first forty-eight treatment modules) for a total of $3,606.05. The magistrate reasoned as follows:

{¶ 16} "[Appellants] Fred and Joanne Palozzi are liable for the services provided to their daughter based on their express contract with [appellee] and as required by R.C. 3103.03. As medical services are 'necessaries,' and the parents have failed to pay for same, [appellee] may look to the child for payment.

{¶ 17} "Based on the admission of all [appellants] that Jeannine Palozzi has retained in full the settlement paid for her injuries, she has been unjustly enriched by retaining such settlement without paying for the medical services rendered in the accident resulting in such settlement. Had Medicaid been billed, she should have had to pay back from the funds she now retains, $1,227.98, and [appellee] would have those funds. Had Westfield paid [appellee] directly for the balance of the services, $2,378.07, her settlement would be further reduced by that amount."

{¶ 18} Thereafter, the trial court adopted the magistrate's recommendation on the same day the recommendation was issued. Appellants, now through their attorney, timely filed objections to the magistrate's decision on October 10, 2001, on the basis that the application of the law to the facts of the case was erroneous.

{¶ 19} In relevant part to this appeal, appellants suggested that the magistrate found that appellee accepted Jeannine as a Medicaid patient. From this, appellants concluded that pursuant to Ohio Adm.Code 5101:3–1–131, appellee could seek payment from Medicaid, not appellants.

{¶ 20} As an aside, we note that appellants did not provide the trial court with a transcript of the proceedings before the magistrate or an affidavit of the evidence to support their claim that the magistrate's application of the law to its factual findings was incorrect. A transcript of the proceedings, however, is not necessarily required if a party is seeking review of the magistrate's decision based on the application of the law to its factual findings. Civ.R. 53(E)(4)(a).

{¶ 21} In a judgment entry dated November 8, 2001, the trial court overruled appellants' objections to the magistrate's decision. It is from this judgment that appellants appeal, submitting a single assignment of error for our consideration:

{¶ 22} "The trial court committed error when it granted the plaintiff judgment against defendants for services rendered, when plaintiff provided services to defendant as a Medicaid patient requiring plaintiff to seek reimbursement from Medicaid and not the defendants."

{¶ 23} Before we may address the merits of appellants' assignment of error, we must set forth the appropriate standard of review.

{¶ 24} When a party objecting to a magistrate's decision has failed to provide the trial court with the evidence and documents by which the court could make an independent finding, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the magistrate's decision. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 730, 654 N.E.2d 1254. In other words, our task is to determine whether the trial court's application of the law to the factual findings constitutes an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it

implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 25} With this standard of review in mind, we return to the merits of the instant appeal. According to appellants, given that the magistrate determined that appellee accepted Jeannine as a Medicaid patient, they are not responsible for paying the medical bills. Appellants maintain that if a medical provider accepts an individual as a Medicaid patient, then the provider may look only to Medicaid for payment.

{¶ 26} Appellee counters by contending that Jeannine was accepted as a private patient, not a Medicaid patient. According to appellee, "[a]t the conclusion of the first 48 modalities, Medicaid coverage ceased. The parties entered into a new contract and understood that appellee's services would be presented to and paid through the issuance carrier of the tortfeasor."[1]

{¶ 27} According to the magistrate's factual findings, appellee was advised that Jeannine was eligible for treatment under Medicaid, and that Medicaid would provide coverage for the first forty-eight treatment modules. At the conclusion of this treatment, "[appellee] advised Jeannine that it could no longer treat her. She then advised [appellee] that she needed further treatment, and expected Westfield Insurance, the carrier for the wrong-doer in the accident to pay the bills. [Appellee] confirmed coverage and continued to treat Jeannine."

{¶ 28} The logical inference from the above portion of the magistrate's factual findings is that appellee initially accepted Jeannine as a Medicaid patient during the time she received the first forty-eight treatment modules. Upon completion of this treatment, any additional treatment was to be covered by Westfield Insurance, the tortfeasor's insurance carrier.[2]

{¶ 29} Given the facts as determined by the magistrate, we now must consider whether appellants are liable for payment of the physical therapy treatments furnished by appellee to Jeannine.

{¶ 30} It is axiomatic that Ohio has chosen to participate in the Medicaid program. According to Ohio Adm.Code 5101:3–1–131(A), all Medicaid payments flow from the state directly to the medical provider:

---

1. As an aside, we note that appellee did not file objections to the magistrate's decision with the trial court.

2. In fact, during the proceedings below, appellee conceded this fact by stating the following in its trial brief: "There [was] no dispute that all subsequent modalities were to be paid by the tortfeasor or his carrier * * *. The total of all modalities subsequent to the 48th modality is $2,378.07."

{¶ 31} "The department's payment constitutes payment-in-full for any covered service. The provider may not bill the recipient for any difference between that payment and the provider's charge. The provider may not charge the recipient any copayment, cost-sharing, or similar charge. The provider may not charge the recipient a down payment, refundable or otherwise." See, also, *Barney v. Holzer Clinic, Ltd.* (C.A.6, 1997), 110 F.3d 1207, 1210.

{¶ 32} In the instant matter, the magistrate recognized that "Medicaid allowed Jeannine forty-eight (48) treatment modules." Thereafter, the magistrate essentially determined that appellee accepted Jeannine as a Medicaid patient during the first forty-eight treatment modules. Under these circumstances, appellee, as the provider, "is absolutely barred from requesting any payment from patients for treatment provided under the [Medicaid] program." *Barney* at 1210. See, also, *Sparks v. George A. Sawaya M.D., Inc.* (1983), 9 Ohio App.3d 275, 276, 9 OBR 489, 459 N.E.2d 901.

{¶ 33} In fact, "[m]edical providers may not bill patients for treatment under the [Medicaid] program unless they have explicitly agreed prior to treatment that the patient will personally be liable, even if the providers themselves cannot get reimbursement from the state." *Barney* at 1211. See, also, Ohio Adm.Code 5101:3–1–131(D).

{¶ 34} Based on the magistrate's factual findings that appellee accepted Jeannine as a Medicaid patient as to the first forty-eight treatment modules, appellee could not seek any payment from appellants and was required to accept as full payment of their bill the amount received from the Department of Job and Family Services. *Barney* at 1210; *Sparks* at 276–277, 9 OBR 489, 459 N.E.2d 901; Ohio Adm.Code 5101:3–1–131(A). The fact that the magistrate found that appellee never billed Medicaid is of no consequence. Pursuant to Ohio Adm.Code 5101:3–1–131(C), appellee still could not seek payment from Jeannine or her family:

{¶ 35} "If a Medicaid claim has been denied for payment due to an unacceptable or untimely claim submission, * * * it does not mean that services rendered were noncovered and therefore billable to the recipient. *The recipient may not be billed for such services.*" (Emphasis added.)

{¶ 36} In summation, appellee cannot seek payment from appellants for the first forty-eight treatment modules, which totaled $1,227.98, as appellee accepted Jeannine as a Medicaid patient during this time. Therefore, the trial court abused its discretion in adopting the magistrate's decision as it contained an error of law.

{¶ 37} Next, we must determine whether appellants are jointly liable for the subsequent treatments totaling $2,378.07, which were furnished after the

conclusion of the first forty-eight modules. As to these additional treatments, the magistrate apparently determined that Jeannine was no longer a Medicaid patient. Rather, according to the magistrate's factual findings, the additional treatment modules were to be covered by Westfield Insurance, the tortfeasor's insurance carrier.[3] Since Westfield Insurance did not pay appellee directly for the additional treatment totaling $2,378.07, the magistrate determined that appellants were jointly liable for such amount.

{¶ 38} It is undisputed that at the time of the accident, Jeannine was a minor. According to the magistrate's decision, "[a]fter the [physical therapy] treatment was completed, Jeannine, then an adult, received a settlement for the accident claim." The reasonable inference from this statement is that Jeannine was still a minor at the time she received treatment from appellee. Thus, Jeannine's accident-related medical expenses were incurred during her minority.

{¶ 39} "[I]t is commonly recognized that parents are primarily liable for the necessary medical expenses of * * * their minor children. * * * This is not to say that a minor may not be liable in contract for medical bills. A child may be liable for the reasonable value of the necessaries provided to him by another on quasi-contract and unjust enrichment theories. * * * However, this liability is secondary to that of the parents who are charged with the duty to support their minor child, in accordance with R.C. 3103.03(A) and (D)." (Citations omitted.) *Auchmuty v. Ward* (Aug. 6, 1998), 3d Dist. No. 12–98–4, 1998 WL 438799, at * 2. See, also, *Blakeman v. Condorodis* (1991), 75 Ohio App.3d 393, 397, 599 N.E.2d 776; *Univ. of Cincinnati Hosp. v. Cohen* (1989), 57 Ohio App.3d 30, 31, 566 N.E.2d 187; *Physicians Health Plan of Ohio v. Bowers* (Nov. 25, 1997), 4th Dist. No. 96CA2239, 1997 WL 732462, at * 3. Thus, if the parents fail or refuse to pay for the necessary medical care furnished to the minor, then the medical provider may look to the child for payment. *Cohen* at 31, 566 N.E.2d 187.

{¶ 40} In the instant matter, the magistrate determined that Fred and Joanne Palozzi were liable for the services provided to their daughter Jeannine "based on their express contract with [appellee] and as required by R.C. 3103.03." Additionally, the magistrate found that the physical therapy treatments furnished by appellee to Jeannine constituted a necessary service.

{¶ 41} A presumption exists that the medical provider relied on the parents' credit for payment when the minor child lives with her parents. *Cohen* at 31–32,

---

3. {¶ a} This conclusion is based on the following factual findings made by the magistrate:

{¶ b} "Medicaid allowed Jeannine forty-eight (48) treatment modules. After these modules were provided, [appellee] advised Jeannine that it could no longer treat her. She then advised [appellee] that she needed further treatment, and expected Westfield Insurance, the carrier for the wrong-doer in the accident to pay the bills. [Appellee] confirmed coverage and continued to treat Jeannine."

566 N.E.2d 187. As to this point, the magistrate found that at the time Jeannine was referred to appellee, she was living with her parents. Thus, the relationship between Jeannine and her parents creates primary and secondary liability. *Cohen* at 32, 566 N.E.2d 187. Since the magistrate determined that Westfield Insurance did not pay appellee for the balance of the additional services incurred totaling $2,378.07, appellee must first look to the parents for payment, and then to Jeannine who is secondarily liable. *Cohen* at 32, 566 N.E.2d 187. Accordingly, on remand the trial court's judgment should reflect this sequence of recovery.

{¶ 42} Based on the foregoing analysis and to the extent provided above, appellants' lone assignment of error is well taken. Accordingly, the judgment of the trial court is affirmed in part as to the award of $2,378.07, and reversed in part as to the sequence of recovery of such amount and as to the award of $1,227.98. Hence, the matter is remanded for proceedings consistent with this opinion. Specifically, on remand, the trial court shall issue a new judgment in favor of appellee in the amount of $2,378.07, and indicate that Jeannine's liability is secondary to that of her parents, who are primarily liable for payment of that amount.

Judgment affirmed in part,
reversed in part
and cause remanded.

WILLIAM M. O'NEILL, P.J., and ROBERT A. NADER, J., concur.