This is an appeal from summary judgment by Rosemary Hipps, an unsuccessful applicant for the position of Child Nutrition Supervisor (CNS) for the Lauderdale County Board of Education (Board). The Board hired Judy Patterson, a recently-resigned member of the Board, as the CNS.
The trial court concisely related its findings in its order, from which the following pertinent facts are gleaned:
In 1980, the Board, including Patterson as a member, adopted a policy which required CNS applicants to possess, at a minimum, a master's degree, coursework in an area related to child nutrition programs, and three years' successful teaching experience. Patterson inquired about the CNS position as early as 1987, and in the fall of 1987, she went back to school to obtain a master's degree and to renew her teaching certificate. The CNS position was held by Ms. Ardelle Jones, who announced her retirement plans in July 1989. Patterson learned of Jones' retirement before it was made public, and she sought the support of the superintendent and other Board members prior to an official announcement of the vacancy. The Board also received applications for the position from Hipps, a tenured teacher in the Lauderdale County school system, and two others, who were interviewed in July 1989. Patterson announced her decision to seek the position in August 1989.
The Board's Policies and Procedures Manual (manual) stated the requirement of a master's degree, coursework in child nutrition programs, and a minimum of three years' successful teaching experience for the CNS position; nevertheless, the Board's notice of the CNS vacancy specified that only a bachelor's degree and successful teaching experience were requirements for the position. The superintendent asserted that he was not aware of the qualifications adopted by the 1980 Board. Patterson possessed only a bachelor's degree and two years' prior teaching experience at the time that the superintendent interviewed her in August 1989. Upon learning of the discrepancy between the announced qualifications and those contained in the manual, the superintendent and the Board announced an intention to modify the qualifications for the position on August 17, 1989, notifying the interested parties by letter. Prior to the Board meeting on August 24, 1989, Patterson attempted to withdraw from consideration for the job; however, that offer was refused. The superintendent recommended at that meeting that the qualifications be modified, and Patterson excused herself from the meeting. After the Board voted to lessen the CNS requirements, the superintendent announced that *Page 1025 
Patterson wished to resign from the Board and he recommended that her resignation be accepted. The Board accepted that resignation. Thereafter, acting upon the superintendent's recommendation, the Board voted to hire Patterson for the CNS position. Patterson was not involved in these discussions or votes.
It is undisputed that after the Board voted to lessen the CNS requirements, it failed to file a copy of the policy change with the State Superintendent of Education (State) as required by Ala. Code 1975, § 16-8-10. Likewise, when the Board adopted the 1980 policy, it failed to properly file a copy. After Patterson was hired, a complaint was filed with the State Ethics Commission (Commission) alleging that Patterson used her position on the Board to obtain the CNS position. In January 1990, the Commission notified Patterson that after careful investigation, it "could not find sufficient substantiating evidence to forward the case to the appropriate law enforcement authorities," and that it was closing its investigation.
Hipps filed a complaint in February 1990 in the circuit court against the Board[1], alleging a breach of contract, violation of the ethics laws, and an unspecified violation of the Alabama Constitution. In April 1990, the Board moved for summary judgment. Following lengthy discovery, the trial court entered summary judgment favoring the Board in January 1993. Hence, this appeal.
Hipps contends on appeal that the trial court erred in granting summary judgment. She argues that the Board breached her employment contract when it rejected her application for CNS and instead hired a former Board member who did not meet the Board's minimum qualifications; that the Board's attempt to amend its policies governing the qualifications for the CNS position was void because Patterson unduly influenced the Board; that the Board failed to amend its policies in accordance with Ala. Code 1975, § 16-8-10; that the Board violated the Alabama Constitution; and that the trial court erred in refusing to recognize that a private citizen may utilize state ethics laws to bring a private action against a public official accused of using public office for personal gain.
A motion for summary judgment tests the sufficiency of the evidence, and a summary judgment is proper when the trial court determines that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; Melton v. Perry Co. Boardof Education, 562 So.2d 1341 (Ala.Civ.App. 1990). Once the moving party has made a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to provide substantial evidence in support of his contention. Murdoch v. Knollwood Park Hospital, 585 So.2d 873
(Ala. 1991). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); see also Ala. Code 1975, § 12-21-12(d). No presumption of correctness attaches to the decision of the trial court regarding summary judgment, and our review is de novo. Gossett v. Twin County Cable T.V., Inc.,594 So.2d 635 (Ala. 1992). Also, in determining whether substantial evidence exists, we must review the record in the light most favorable to the nonmovant. Specialty ContainerManufacturing, Inc. v. Rusken Packaging, Inc., 572 So.2d 403
(Ala. 1990).
Hipps first contends that the Board failed to follow its own policy, which required that CNS applicants possess at least a master's degree, coursework in child nutrition courses, and three years' successful teaching experience. Hipps correctly asserts that a breach of contract action may exist against a school board for failure to follow its established hiring policy. Belcher v. Jefferson *Page 1026 County Board of Education, 474 So.2d 1063 (Ala. 1985); Purnellv. Covington Co. Board of Education, 519 So.2d 560
(Ala.Civ.App. 1987).
Hipps's argument would have merit had the Board not changed its minimum requirements for the CNS position. The Board changed the requirements, however, and had earlier sent notice of the proposed changes to every candidate for the CNS position in accordance with Ala. Code 1975, § 16-8-10. The Board failed to file a copy of the 1989 modification with the State, nor had it done so with the 1980 requirement. Hipps argues that because the Board never filed a copy of the modifications with the State, the 1989 modification is invalid.
Ala. Code 1975, § 16-8-10, states in pertinent part:
 "The county board must establish such policies and adopt such rules and regulations and file them with the state superintendent of education. Such written policies, rules and regulations, so established, adopted or promulgated shall be made available to all teachers employed by the county board. Any amendments to such policies, rules and regulations shall be developed in the same manner, filed with the state superintendent and furnished to the teachers employed by the local board within 20 days after adoption thereof."
It is admitted that the Board failed to file a copy of its policy with the State as required by § 16-8-10; however, inKohen v. Board of School Commissioners of Mobile County,510 So.2d 216 (Ala. 1987), our Supreme Court determined that such failure will not necessarily void a policy change. The trial court's order stated: "Moreover, the [1980] policy establishing the higher standards for the CNS position had also never been filed. Thus, if the new policy was invalid for failure to file, then the original policy relied upon by the plaintiff would likewise be invalid." We agree with this reasoning and would add the obverse: If the 1980 policy was deemed to be effective, absent compliance with Ala. Code 1975, § 16-8-10, then the 1989 modification must also be effective. Moreover, we take this opportunity to specifically adopt the implicit holding inKohen, supra, that the filing requirement of Ala. Code 1975, §16-8-10, is ministerial, rather than substantive, in nature. We are additionally persuaded in this view by an affidavit from the State Department of Education's general counsel, who asserts that Ala. Code 1975, § 16-8-10, is a reporting requirement, and that the State does not have the authority to review, scrutinize, approve or disapprove any policy filed therewith. Failure to notify the state within 20 days, therefore, does not automatically invalidate a policy modification. Kohen, supra.
Hipps alternatively presents a novel argument in support of a breach of contract claim. Hipps asserts that a teacher may sue a school board for breach of contract when the school board fails to follow its own policies, citing Belcher, supra. Our Supreme Court has stated that "Alabama recognizes the general rule that 'every contract does imply [an obligation of] good faith and fair dealing.' " Hoffman-La Roche, Inc. v. Campbell,512 So.2d 725, 738 (Ala. 1987). (Citation omitted.) Hipps argues that when the Board's actions are viewed in the light most favorable to her position, it becomes evident that the Board breached its contractual duty of good faith and fair dealing towards her.
While appreciating the ingenuity of Hipps's argument, we reject her contention. Although the contractual obligation of good faith and fair dealing exists, its contours have never been specifically defined. See Tidmore Oil Co. v. BP OilCompany/Gulf Products Division, A Division of BP Oil Company,932 F.2d 1384 (11th Cir. 1991). Our Supreme Court has ruled, however, that bad faith is not actionable absent an identifiable breach in the performance of the specific terms of the contract. Lake Martin/Alabama Power Licensee Association,Inc. v. Alabama Power Co., 601 So.2d 942 (Ala. 1992). Clearly, the Board breached no terms of a contract with Hipps; therefore, Hipps cannot assert a bad faith claim in this action.
Hipps next contends that the Board's action is contrary to the Const. of Ala. 1901, Article I, § 22, which states: *Page 1027 
 "That no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment."
Hipps asserts that Article I, § 22, protects the rights of tenured teachers, citing Faircloth v. Folmar, 252 Ala. 223,40 So.2d 697 (1949). We find that Hipps's reliance upon Article I, § 22, is misplaced. The crucial distinction is that the Board did not ex post facto abrogate Hipps's contractual rights. We might find merit in Hipps's argument if the Board had raised
the CNS requirements so as to eliminate Hipps. In lowering the CNS requirements, however, the Board did not curtail any contractual right belonging to Hipps, but rather enabled more persons to qualify for the position. The Board's action simply does not qualify as an ex post facto action.
Hipps last asserts that she may use Const. of Ala. 1901, Article I, § 13, and the state ethics laws in pari materia to bring a private action against Patterson. Const. of Ala. 1901, Article I, § 13, states "[t]hat all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
Ala. Code 1975, § 36-25-5(a), states:
 "No public official or employee shall use an official position or office to obtain direct personal financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law."
We note, however, that Ala. Code 1975, § 36-25-24, provides that citizens wishing to pursue grievances against a public official must file a complaint through the Commission. If the Commission does not take proper action within 45 days, the complainant may then file his complaint with the attorney general or other officers authorized to enforce the state ethics laws.
The record reveals that a complaint was filed with the Commission, which investigated the matter and could not find sufficient evidence to warrant forwarding the matter to the appropriate law enforcement authorities. We know of no cases holding that the Alabama Code of Ethics, Ala. Code 1975, §§36-25-1 through -30, contemplates a citizen bringing a private action against a public official for a matter falling within the purview of the Code of Ethics, nor does Hipps cite us to any authority so holding. It is well settled that a civil cause of action arises whenever a criminal act injures the person or property of another. Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66,66 So. 657 (1914). See also Martinson v. Cagle,454 So.2d 1383, 1385 (Ala. 1984), where our Supreme Court held:
 "Even though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages. However, civil liability will ensue only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted."
As noted above, the Commission declined to label Patterson's action as a crime. Moreover, our analysis above established that the Board has not breached its contract with Hipps. Therefore, Hipps has not suffered an injury as contemplated inMartinson.
The Alabama Legislature enacted the state ethics laws to prevent public officials from using their offices to realize private gain. Rampey v. State, 415 So.2d 1184
(Ala.Crim.App. 1982). An uncharitable assessment of the Board's and Patterson's actions could construe those actions as being contrary to the spirit, if not the letter, of the ethics laws. This dilemma is inherent whenever a public official, such as Patterson, has any dealing with the instrumentality he or she purports to serve. We trust that in the future, this Board, as well as other boards, will be more sensitive to the appearance of impropriety, and will additionally comply *Page 1028 
with all applicable state statutes, regulations, and requirements, including ministerial acts.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.
[1] Although Hipps filed suit against the Lauderdale County Board of Education, the superintendent individually and in his capacity as superintendent, each Board member individually and in their capacity as Board members, and Patterson individually and in her former capacity as chairman of the Board, we perceive an identity of interests among all the named defendants, and hereinafter, the defendants shall collectively be referred to as "Board."