This appeal concerns the right of a provider of medical services to receive payment from a patient for necessary medical services rendered to the patient during the patient's minority but for which the patient's parent or guardian has not paid.
In November 1996, Baptist Health Systems, Inc., doing business as Birmingham Baptist Medical Center Princeton ("the hospital") sued Daphne Williams ("the patient") and her mother, Loretta Williams, in the Jefferson Circuit Court, seeking $12,144 plus interest under theories of open account and work and labor done. Default judgments were entered in favor of the hospital as to both defendants in 1997; however, when the hospital attempted in August 2001 to garnish the patient's wages, the patient moved for relief from the default judgment, averring, among other things, that she had not been personally served with process. The trial court in December 2001 set aside its judgment and restored the hospital's claims against the patient to its trial docket.
In July 2002, both the hospital and the patient filed summary-judgment motions pursuant to Rule 56, Ala.R.Civ.P. The exhibits to the parties' motions indicate that the patient was 18 years old and awaiting enrollment in a college when she was admitted to the hospital on July 5, 1995, for treatment of menometrorrhagia and severe anemia. During her two-day hospitalization, the patient underwent various procedures, including, among other things, X-rays, magnetic resonance imaging, ultrasound, and a dilation and curettage, and she received several units of blood via transfusion; there is no dispute that the services were reasonable, necessary, and professionally performed. The hospital's records list the patient's mother as a "guarantor" of payment, and a statement of charges prepared seven days after the patient's discharge indicates that the patient had been represented to be the beneficiary of a contract of group health insurance provided as an incident to the mother's employment as a grocery-store manager. According to the patient's affidavit in support of her summary-judgment motion, at the time of her hospitalization, the patient did not work, had no source of income, and was dependent upon the mother to provide support; the patient "believed" that she was covered under the mother's health insurance.
On August 2, 2002, the trial court denied the patient's summary-judgment motion and entered a summary judgment in favor of the hospital, awarding it $16,252.18 (an *Page 151 
amount representing $12,144 in principal and $4,108.18 in interest) plus court costs. The patient appeals from that judgment.
Under Rule 56(c)(3), Ala.R.Civ.P., a trial court, upon a proper motion, shall enter a summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Because the pertinent facts in this case are undisputed, we review the trial court's application of law to those facts to determine whether the hospital was entitled to a judgment as a matter of law. See Carpenterv. Davis, 688 So.2d 256, 258 (Ala. 1997). We review the trial court's judgment under a de novo standard. See Hipps v. Lauderdale County Bd. ofEduc., 631 So.2d 1023, 1025 (Ala.Civ.App. 1993).
Under Alabama law, one who is unmarried and has not reached the age of 19 years is deemed to be a minor, i.e., subject to the disabilities of nonage (although such disabilities may, in certain circumstances, be removed by a judgment of a juvenile court). See § 26-1-1, § 26-13-1et seq., § 30-4-15, and § 30-4-16, Ala. Code 1975. Among the disabilities of nonage is the incapacity to make a binding contract: "It is a well-established general rule at common-law, and recognized in this state, that a minor is not liable on any contract he makes and that he may disaffirm the same." Children's Hosp. of Birmingham, Inc. v. Kelley,537 So.2d 917, 917 (Ala.Civ.App. 1987), aff'd in pertinent part, rev'd onother grounds, Ex parte Odem, 537 So.2d 919 (Ala. 1988). This case, however, does not turn on the existence of an express contract involving a minor party; the evidence submitted by the parties does not support the proposition that the patient ever agreed to pay the hospital for the services provided to her.
However, Alabama law, like the law of most other states, provides that persons providing "necessaries" of life to minors may recover the reasonable value of such necessaries irrespective of the existence, or nonexistence, of a (voidable) contract respecting those necessaries. As stated by the Alabama Supreme Court in Ragan v. Williams, 220 Ala. 590,127 So. 190 (1930), "[w]hen necessaries are furnished to one who by reason of infancy cannot bind himself by his contract, the law implies an obligation on the part of such person to pay for such `necessaries' out of his own property." 220 Ala. at 590, 127 So. at 191. Although Ragan
recognizes that "necessaries," as a term of art, is "relative" and "flexible," that case also indicates that "medicine and medical attention" will fall within the scope of life's necessaries.220 Ala. at 591, 127 So. at 191.
More recently, in Ex parte Odem, supra, 537 So.2d 919, the Alabama Supreme Court discussed the effect of a minor's infancy on the minor's duty to pay for necessary medical services administered to the minor's own child. That court described the obligation of the minor to pay for such necessary medical services as "aris[ing] from a quasi-contractual relationship created by operation of law which enforces the implied contract to pay." 537 So.2d at 920. The Alabama Supreme Court held that the minor was "liable for the just value of the necessaries," i.e., the cost of the medical care, but not for attorney fees incurred in collecting the funds as specified in a written contract the minor had elected to disaffirm. Id.
The patient in this case attempts to distinguish herself from the minor in Odem by pointing out that she had been living at home, in the sole care of her mother, at the time of her hospitalization, and was not self-supporting at that time. Although Ragan and Odem do not recognize *Page 152 
any limitations on the doctrine of necessaries, a number of other states have acknowledged a limitation on that doctrine when a minor is under the care of a parent or guardian who is capable of providing for the minor's necessaries. See, e.g., Westrate v. Schipper, 284 Mich. 383, 386,279 N.W. 870, 871 (1938) ("[T]he general rule of the common law . . . holds that an infant is not liable for necessaries, if he is living with his father who is ready and willing to pay for necessaries.").
That limitation, however, does not apply where the minor's parent fails or refuses to provide necessary medical care for the minor. As noted by Maryland's highest court, "the doctrine of necessaries is sufficient to hold a minor child liable for medical expenses incurred by him or her if it can be shown that his or her parent is unwilling or truly unable to pay them." Garay v. Overholtzer, 332 Md. 339, 371, 631 A.2d 429, 445
(1993). In this case, the patient's mother has not only failed and/or refused to pay for the patient's hospitalization for almost seven years, but the patient's mother has also sought and obtained relief under the United States Bankruptcy Code, which barred the hospital from executing on its judgment against the patient's mother for the price of the services provided to the patient during her minority.
In Gardner v. Flowers, 529 S.W.2d 708 (Tenn. 1975), the Tennessee Supreme Court permitted a hospital to recover reasonable medical expenses from a minor who had received treatment at the hospital. In that case, the only payment the hospital had received with respect to the minor's treatment had been a partial payment from a government public-welfare agency, and it was undisputed that the minor's mother was financially unable to provide hospital care for the minor. The Tennessee Supreme Court rejected the argument that the minor, merely because she was in the care and custody of her mother, could not be held liable for payment for necessaries as a matter of law, stating that American authority was "almost unanimous in saying, either expressly or by necessary implication, that the parents' inability to provide necessaries to the infant is enough to bind the infant" to a duty to pay for necessaries. 529 S.W.2d at 711. Although Gardner is, of course, not binding precedent, we note that the Alabama Supreme Court has cited Gardner in holding that a minor was obligated to reimburse a insurer who had paid for medical services under an insurance contract with the minor's parent. See Peck v. Dill, 581 So.2d 800, 804 (Ala. 1991).[1]
The patient relies principally upon North Carolina Baptist Hospitals,Inc. v. Franklin, 103 N.C. App. 446, 405 S.E.2d 814, in seeking reversal of the summary judgment in favor of the hospital. In that case, the North Carolina intermediate appellate court reversed a judgment in favor of a hospital against a minor on a claim seeking payment for necessary medical services administered to the minor because (1) the hospital had agreed to receive payment from the minor's parents (i.e., the minor had not applied for the services on her "own credit"), and (2) the minor's parents had assumed the responsibility of making payments to the hospital and had, in fact, made certain partial payments. However, both of these rationales are suspect. First, as Ragan and Odem make clear, the necessaries doctrine supports the existence of a legal obligation in a minor that isimplied, under Alabama law, *Page 153 without regard to the potential existence or nonexistence of an express contract. Accord, Gardner, 529 S.W.2d at 711 (applying Tennessee law and drawing the same conclusion). Second, to distinguish between those parents whose failure or refusal to provide for their children is merely sporadic and those parents who consistently fail or refuse to provide for their children would, as Maryland's highest court has stated, "plac[e] hospitals and other emergency health care providers in a situation where apparently financially-able individuals may avoid paying for necessary medical treatment through a contrivance," i.e., selecting only a large hospital bill not to pay. See Schmidt v. Prince George's Hosp.,366 Md. 535, 549, 784 A.2d 1112, 1120 (2001) (expressly rejectingFranklin). We therefore decline the patient's invitation to followFranklin in this factual setting.
Moreover, the trial court's judgment in favor of the hospital is consistent with general principles of primary and secondary liability for the costs of necessary medical treatment of minors that have been espoused in the most recent cases. In the past year, both the Connecticut Superior Court and the Ohio Court of Appeals have ruled that medical providers can recover the cost of necessary medical treatment from minors, on a secondary basis, when their parents have failed or refused to pay for that treatment. Yale Diagnostic Radiology v. Estate ofFountain, No. CV010074674S, 32 Conn. L. Rptr. 550 (Conn.Super.Ct. 2002) (not published in A.2d); Layton Phys. Therapy Co. v. Palozzi,149 Ohio App.3d 332, 777 N.E.2d 306 (2002).
Likewise, the trial court's judgment is consistent with the American Law Institute's Restatement (Third) of the Law of Restitution Unjust Enrichment, § 20 (Tentative Draft No. 2, 2002), which states that one "who performs [or] supplies . . . professional services reasonably necessary for the protection of another's life or health has a claim in restitution against the other if the circumstances justify the claimant's decision to intervene without a prior agreement for payment or reimbursement." More specifically, Illustration 2 to that section specifically provides that when "a minor lacking capacity to contract . . . is injured in an automobile accident and receives emergency medical attention from . . . a doctor," and the minor's parents "are unable or have refused to pay for [the minor's] living expenses," the doctor will have "a claim in restitution within the rule of [§ 20]." Cf. K.A.L.v. Southern Med. Business Servs., 854 So.2d 106 (Ala.Civ.App. 2003) (plurality opinion concluding that hospital's assignee could recover reasonable costs of emergency lifesaving treatment from patient who, while unconscious, had been unable to give consent to that treatment; citing, among other authorities, Restatement of Restitution § 116 (1937)).
Based upon the undisputed facts and the authorities set forth herein, the trial court's judgment is due to be affirmed. In affirming the trial court's judgment, however, we emphasize that under Alabama law, theprimary duty to provide support to a minor child, including the securing of necessary medical care (and arranging for payment therefor), generally lies with the parent or parents of a minor child. See Ex parte Universityof South Alabama, 541 So.2d 535, 537 (Ala. 1989). Nevertheless, where a parent has failed or refused to fully discharge that duty, as in this case, a provider of medical services may properly seek to enforce the secondary liability of the minor patient to pay a reasonable amount of money for the necessary medical care that that patient has received.
AFFIRMED. *Page 154 
CRAWLEY and THOMPSON, JJ., concur.
YATES, P.J., and MURDOCK, J., concur in the result.
[1] Peck has been overruled as to its requirement that an insurer demonstrate that an injured party has been "made whole" as a condition precedent of the insurer's subrogation rights. See Ex parte State FarmFire Cas. Co., 764 So.2d 543 (Ala. 2000).