This is an appeal by Debe Hyde Jones ("the mother") from the Franklin Circuit Court's denial of her motion to modify provisions of the parties' divorce judgment establishing visitation for William Lynn Jones ("the father"); the mother also contends that the trial court erred in reducing the father's child-support obligation and in failing to order the father to reimburse the mother for one-half of certain expenses. The father cross-appeals and argues that the trial court erred when it held that the father's overpayment of child support was offset by the mother's claim for certain unreimbursed expenses.
The father and the mother were divorced in June 2000. In the divorce judgment, the mother and the father were awarded joint legal custody of their four minor children with primary physical custody vested in the mother. In December 2000, one of the minor children died. In January 2001, the mother filed a petition to modify the father's visitation so that, in the event of any child's illness, all of the *Page 209 
children would immediately be returned to her. The father filed an answer and a counterclaim in which he requested a reduction of his child-support obligation because of the death of one of the children; a modification of the summer visitation schedule; a change in the children's college-fund status; a modification of the pertinent provision in the original judgment allocating each parent two of the children to claim as exempt dependents on that parent's annual income-tax returns; an order that the mother be responsible for one-half of a jointly held credit-card debt; and a limitation on the amount of medical, extracurricular, and other expenses for which the father would be required to reimburse the mother.
In September 2001, the father amended his petition to add a request for primary physical custody of the oldest child; that request was withdrawn at the time of trial. The mother subsequently amended her petition to include a request that the trial court find the father in contempt for nonpayment of certain expenses incurred by the children. The trial court, in an ore tenus proceeding on May 29, 2002, heard testimony from the mother and the father regarding the issues raised in both parties' petitions.
The trial court entered a judgment on July 25, 2002. The judgment denied the mother's request for a modification of the father's visitation, but it granted the father's request that the summer visitation be modified so as to allow both parents sufficient time to take vacations with the children. The trial court reduced, retroactive to the date of the filing of the father's petition for modification, the father's child-support obligation from $262 to $160.43 per week, and it concluded that the father's overpayment of child support during the pendency of the litigation was offset by the unreimbursed expenses claimed by the mother. Finally, the judgment ordered that the children's college fund be divided into two equal accounts, with each party to be responsible for the tax liability on one account, but that both parents would remain joint custodians of the funds.
The mother filed a postjudgment motion in which she disputed the trial court's calculation of the father's child-support obligation and asserted that her calculations indicated that the child-support guidelines required a $208 per week child-support payment by the father. The father filed a postjudgment motion wherein he alleged that the trial court had erred in failing to address his requests that the mother be responsible for one-half of a jointly held credit-card debt and that the trial court limit the amount of medical, extracurricular, and other expenses for which the father would be required to reimburse the mother.[1] Following a hearing, the trial court denied parties' postjudgment motions on September 12, 2002.
When a trial court bases its judgment on ore tenus evidence, that judgment is presumed correct and will not be set aside on appeal, unless this court determines that it is unsupported by the evidence so as to be plainly and palpably wrong. SeeBerryhill v. Reeves, *Page 210 705 So.2d 505 (Ala.Civ.App. 1997). Specifically, modification of child support is a matter that rests within the sound discretion of the trial court, and the trial court's decision will not be reversed absent a clear abuse of discretion. See Griggs v. Griggs,638 So.2d 916 (Ala.Civ.App. 1994).
The father and the mother had been divorced for only seven months when the mother petitioned for a modification in visitation. The father's answer and counterclaim requested a modification of child support because one of the minor children had died since the divorce. The record on appeal does not contain the original divorce judgment;[2] however, the evidence presented in the modification hearing indicates that neither of the parents had experienced a substantial change in income. The mother's Form CS-41 ("Child Support Obligation Income Statement/Affidavit") showed that she was earning a monthly gross income of $2,602, and the father's Form CS-41 indicated his monthly gross income to be $3,705. The trial court also admitted into evidence a copy of the father's 2001 W-2 form that indicated he had earned $47,197.27 during that year. Dividing that annual-income figure by 12 months, the trial court determined the father's monthly gross income to be $3,933; it inserted that figure on the Form CS-42 ("Child Support Guidelines" form) that it used to compute the father's child-support obligation.
The mother argues that the issue whether a parent, whose health-insurance premiums are set by a collective-bargaining agreement, can receive credit for health-insurance costs is an issue of first impression in Alabama. The mother argues that the manner in which the father's health-insurance premium was treated by the trial court — i.e., allowing credit for payment of an insurance premium that the father's employer, not the father, paid but not including this benefit in the father's reported wages — amounts to impermissible "double-dipping" in the sense that the father has gained a benefit from the premium payment without suffering a corresponding detriment of reporting a higher gross income for purposes of calculating child support.
The father is an electrical worker who does not regularly work for any single employer. Through an agreement with his local labor union, the father is allowed to designate part of his hourly salary to pay for health insurance and apprentice fees, and to allocate another part of that salary to two pension funds. The father testified that, if he were to elect not to pay for health insurance through the union, that money would go directly into his paycheck as additional income. It is only if the father actually pays the health-insurance premium that he is entitled to a credit for it on line 9 of Form CS-42. Specifically, Rule 32(B)(7)(c), Ala. R. Jud. Admin., provides that:
 "[t]he amount [of health-insurance premium] shall be deducted from the obligor's share of the total child support obligation, provided the obligor actually pays said premium. If the obligee is actually paying the premium, no further adjustment is necessary."
The father cannot claim that he is paying the health-insurance premium for purposes of line 9 ("Adjustment for Payment of Health Insurance") of Form CS-42, and then disclaim any entitlement to the amount of that premium for purposes of *Page 211 
lines 1 ("Monthly Gross Income") and 4 ("Basic Child Support Obligation") of Form CS-42. The inconsistency in the father's position arises out of his attempt to claim the amount of the insurance premium as a credit without his first including that amount for purposes of calculating the basic child-support obligation.
Income is defined for purposes of the child-support guidelines as "actual gross income of a parent." See Rule 32(B)(1), Ala. R. Jud. Admin. Rule 32(B)(2)(a) defines "gross income" as including "income from any source." As this court explained inMassey v. Massey, 706 So.2d 1272 (Ala.Civ.App. 1997):
 "[T]he trial court must take into account all
sources of income. . . . The trial court has no discretion in this matter. . . . Thus, as recognized by our Supreme Court, the guidelines require the trial court to consider the resources of the parents, and not simply their incomes, in determining child support."
706 So.2d at 1274 (emphasis added); see also Stinson v.Stinson, 729 So.2d 864 (Ala.Civ.App. 1998) (holding that the value of a car, for which the employer supplied the fuel and paid for the insurance, was part of the husband's income).
In the present case, the trial court utilized the father's 2001 W-2 form to determine the father's gross income on Form CS-42; that income did not include the amount of the health-insurance premiums at issue. Therefore, it is particularly noteworthy that the father in Ennis v. Venable, 689 So.2d 165 (Ala.Civ.App. 1996), "contend[ed] that the trial court should have used only the wages that were reported on his W-2 form and that were subject to income tax liability." 689 So.2d at 166. This court responded as follows:
 "While we find no cases in which Alabama courts have specifically addressed the question whether payments into a retirement plan on which taxes are deferred, are excluded from gross income, the intent of our legislature is apparent. Rule 32(B)(1) and (2), Ala. R. Jud. Admin., provides that, for purposes of the child support guidelines, `income' means actual gross income of a parent, and `gross income' includes income from any source. Additionally, this court has stated on previous occasions that a divorced parent's obligation to contribute to the support of his or her minor children is not based solely on his or her wages, but may also be based on income derived from other sources. Barnes v. State ex rel. Cassady, 636 So.2d 425 (Ala.Civ.App. 1994); State ex rel. Smith v. Smith, 631 So.2d 252 (Ala.Civ.App. 1993).
 ". . . While we appreciate the ultimate tax effect of permitting a wage earner to contribute toward a retirement plan, as determined by the Internal Revenue Service, we are also mindful that allowing a parent to exclude deferred income from calculations of child support income on which taxes have been deferred could frustrate the legitimate purpose of the support orders; it would permit a parent charged with a duty of support to lower the amount that would be subject to a support order."
689 So.2d at 166.
The same principle that governed this court's decision inEnnis governs this court's decision in the present case. Regardless of whether a particular payment is excludable (or deferrable or deductible) from an employee's "income" for federal or state income-tax purposes (and therefore may be "excludable" from the employee's "income" as shown on his federal W-2 form), if it is a payment that an employee has the power either to accept or to direct as he or she sees fit — i.e., if the employee has the power to redirect the payment so *Page 212 
as to cause it to be included in the employee's paycheck — then such amount must be included as part of that employee's income for the purposes of calculating the employee's child-support obligation.
For the foregoing reasons, we conclude that the trial court erred in understating the father's gross income and, as a result, miscalculating the amount of child support owed by the father under Rule 32. We reverse the trial court's judgment as to this issue and remand the cause for a recalculation of the child-support obligation consistent with this opinion.
The mother next argues that the trial court erred when it refused to modify visitation to require the father to return the children if any one of them becomes ill while visiting the father. The mother made that request after the death of one of the children in December 2000. In its judgment, the trial court made a specific finding that the death of that child resulted from complications from a diabetic condition that was unknown to either parent. The trial court also stated that no change in visitation requirements would have prevented the death of that child. Instead, the trial court ordered each of the parents to notify the other "upon the necessity of any form of medical treatment within [30] minutes of seeking that treatment."
This court has consistently held that trial courts have broad discretion when determining visitation rights. See Wallace v.Wallace, 485 So.2d 740 (Ala.Civ.App. 1986). A trial court's judgment will not be reversed on appeal unless the evidence shows it to be plainly and palpably wrong. Little v. Little,680 So.2d 308, 311 (Ala.Civ.App. 1996) (citing Wallace, supra). We cannot conclude that the trial court's decision to require only notification to the mother in the event of an illness during visitation, rather than an automatic termination of visitation, was plainly and palpably erroneous.
The mother's final contention is that the trial court erred in failing to order the father to pay one-half of the unreimbursed medical expenses and extracurricular-activity expenses she had incurred with respect to the children and the burial expenses she had incurred with respect to the deceased child of the parties. The mother introduced an exhibit that itemized those expenses she contended were unreimbursed: $898.40 in extracurricular-activity expenses, $590.91 in medical expenses, and $7,303.23 in burial expenses for a total of $8,792.54. The mother asked the trial court to order the father to pay half of those expenses, or $4,396.27. The father rebutted several items listed as extracurricular expenses by producing cancelled checks for some of the listed amounts. However, the trial court stated in its judgment that "[t]he request that [the father] be ordered to pay the cost of the head stone, flowers and closing the grave is denied for lack of subject matter jurisdiction."
We have located no Alabama cases discussing the responsibility of divorced parents for payment of the burial expenses of a minor child; however, our Supreme Court has reviewed a divorced parent's obligation to pay third parties for supplying medical services to a minor. In Ex parte University of South Alabama,541 So.2d 535 (Ala. 1989), it was held that neither the father's lack of consent for medical treatment of a child nor the absence of a child-support order relieved that father of liability to pay for necessary medical expenses incurred by the minor child. Similarly, in Williams v. Baptist Health Systems, Inc.,857 So.2d 149 (Ala.Civ.App. 2003), this court affirmed the principle that "persons providing `necessaries' of life to minors may recover the reasonable value *Page 213 
of such necessaries irrespective of the existence, or nonexistence, of a[n agreement or] contract respecting those necessities." Williams, 857 So.2d at 151. Although a few states have enacted statutes to expressly require both parents to be jointly and severally liable for the medical and funeral expenses of their minor children (see, e.g., Stott v. Stott,737 N.E.2d 854 (Ind.Ct.App. 2000)), some state courts have determined that such a duty exists at common law as part of the doctrine of necessaries.
For example, an Ohio appellate court addressed the issue whether a divorced parent is responsible to pay for burial expenses in In re Terrell, 48 Ohio App.2d 352, 357 N.E.2d 1113
(1976). In that case, the court discussed the principle that a parent's duty to support his or her child is also a duty owed to the state. Id., 48 Ohio App.2d at 354, 357 N.E.2d at 1115. The opinion then discussed the liability of a parent to pay third parties for furnishing services to the minor, citing Illinois and previous Ohio cases applying the doctrine of necessaries. Ultimately, the court concluded that a parent's duty to support a minor child includes the obligation to pay reasonable funeral expenses for any child who dies before reaching the age of majority. Id., 48 Ohio App.2d at 355, 357 N.E.2d at 1116.
In other states, appellate courts have applied the doctrine of necessaries as obligating a parent to pay for the expenses incurred by his or her child, including medical and funeral expenses. See, e.g., Kaplon v. Harris, 567 N.E.2d 1130 (Ind. 1991); Rose Funeral Home v. Julian, 176 Tenn. 534,144 S.W.2d 755 (1940); and Graul v. Adrian, 32 Ill.2d 345, 205 N.E.2d 444
(1965). After reviewing these decisions in the light of Alabama law regarding the doctrine of necessaries as espoused in Exparte University of South Alabama, supra, and Williams v.Baptist Health Systems, supra, we conclude that reasonable burial expenses are also an obligation that a parent may be required to pay on behalf of a minor child. We further conclude that the trial court erred in determining that it had no subject-matter jurisdiction to direct the father to reimburse the mother for paying his share of those expenses.
By its terms, the trial court's judgment in this case holds that the only potential unreimbursed expenses the mother could claim were one-half of the children's extra-curricular-activity and medical expenses, or, at most, $744.65. At trial, the father argued that he had paid reasonable burial costs; however, the mother disputed that contention and introduced an itemized list of unreimbursed funeral expenses. In deciding that it did not have subject-matter jurisdiction, the trial court did not address the arguments presented by the father and the mother regarding their respective contributions towards the reasonable costs of necessary burial expenses. Because we conclude that the burial expenses could correctly be considered by the trial court in making its determination of any moneys that the father owed the mother, we reverse the trial court's judgment to the extent that the trial court concluded that it did not have jurisdiction to consider burial costs, and we remand the cause for the trial court to determine what amount, if any, is due the mother for the unreimbursed burial expenses of the parties' minor child.
The father argued in his cross-appeal that the trial court erred in finding that the father's overpayments of child support during the pendency of the modification were offset by the unreimbursed expenses claimed by the mother. Because we are reversing the trial court's judgment relating to the issues of burial expenses and *Page 214 
child-support calculation, and because that reversal directly implicates the parties' relative obligations to each other, we cannot address at this time whether the trial court abused its discretion in concluding that the father's overpayment was completely offset by the mother's reimbursement claims. On remand, the trial court may properly consider the overpayment when making a determination regarding the unreimbursed burial expenses. See Ravenel v. Ravenel, 835 So.2d 1069 (Ala.Civ.App. 2002). The trial court's judgment is reversed as to the calculation of child support and as to the issue of payment of burial expenses; as to all other issues raised on appeal, the trial court's judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] We note that a modification petition cannot revive claims of error as to the judgment sought to be modified; therefore, we will not address the arguments of the father regarding the credit-card debt and the lack of limits on unreimbursed expenses that were not presented in a timely appeal from the June 2000 judgment. See McQuinn v. McQuinn, 866 So.2d 570 (Ala.Civ.App. 2003) (plurality opinion holding that mother's failure to appeal from original judgment regarding stepson visitation precluded later attack in modification proceeding). See also G.P. v.A.A.K., 841 So.2d 1252 (Ala.Civ.App. 2002) and Greenhill v.Bear Creek Dev. Auth., 519 So.2d 938 (Ala. 1988).
[2] The mother has attached what appears to be a copy of the original divorce judgment as an appendix to her appellate brief; however, this court cannot consider any matter that is not contained in the record on appeal. See Adams v. Sanders,811 So.2d 542 (Ala.Civ.App. 2001); Davis v. Davis, 753 So.2d 513
(Ala.Civ.App. 1999).