Neal Dellocono and his wife Saundra Dellocono appeal from a summary judgment entered in favor of Thomas Hospital ("the hospital") in a personal-injury/product-liability action. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975. *Page 695 
The record reveals the following pertinent facts. Neal Dellocono was a member of Thomas Health and Fitness Center, a division of Thomas Hospital, which is owned and operated by the Baldwin County Eastern Shore Health Care Authority ("the Authority"). On November 27, 2001, Neal Dellocono was injured when a "Thera-Ball"[1] used during the course of an exercise regimen at Thomas Health and Fitness Center "exploded." As a result of the explosion, Neal Dellocono allegedly suffered a "fracture of his lower sacrum and sacroiliac joints."
On January 15, 2003, the Delloconos commenced this action against the hospital and other defendants[2] in the trial court, alleging claims of negligence and wantonness on behalf of Neal Dellocono; the Delloconos asserted a loss-of-consortium claim on behalf of Saundra Dellocono. The hospital answered the complaint, asserting in part that the Delloconos had failed to file an itemized claim with the County Commission of Baldwin County before commencing the present action, which, the hospital asserted, was required by § 6-5-20 and § 11-12-5. Ala. Code 1975. The Delloconos moved the court to strike that affirmative defense, stating that they had provided sufficient notice of their claims to the hospital by sending a "settlement claim" to an "authorized representative" of the hospital.
On August 26, 2003, the hospital moved the trial court for a summary judgment, arguing that, based on the undisputed facts contained in the record, the hospital was entitled to a judgment as a matter of law because the Dellonocos had not given notice of their claims to the Baldwin County Commission. On September 23, 2003, the trial court entered an order granting the hospital's summary-judgment motion; on November 14, 2003, that order was certified as final pursuant to Rule 54(b), Ala. R. Civ. P. The Delloconos timely filed their notice of appeal.
We review a trial court's summary judgment de novo, giving no presumption of correctness to the ruling by the trial judge.Gossett v. Twin County Cable TV, Inc., 594 So.2d 635, 638 (Ala. 1992). In order to grant a motion for a summary judgment, the court must determine that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Mitchell v. Richmond, 754 So.2d 627, 628 (Ala. 1999). Further, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
The dispositive issue on appeal is whether the Delloconos were required to comply with § 6-5-20 and § 11-12-5, Ala. Code 1975, before commencing this action. Those code sections mandate that an itemized claim against a county must be presented to the county commission before a legal action may be brought against the county. Section 6-5-20 provides:
 "a) An action must not be commenced against a county until the claim has been presented to the county commission, disallowed or reduced by the commission *Page 696 
and the reduction refused by the claimant.
 "(b) The failure or refusal of such a county commission to enter upon its minutes the disallowance or reduction of the claim for 90 days is a disallowance.
 "(c) Proof of the fact of presentation of such claim to such county commission may be made by parol evidence."
Section 11-12-5 provides, in part:
 "No claim against the county shall be passed upon or allowed by the county commission unless it is itemized by the claimant or some person in his behalf having personal knowledge of the facts and all claims passed upon and allowed according to this section must be entered in the order in which they are allowed in a book kept for that purpose and filed for future reference within two weeks after the meeting at which such allowances were made, and the claim must show whether or not any part thereof has been paid."
In order to determine whether the Delloconos were required to comply with § 6-5-20 and § 11-12-5, we must initially resolve the issue whether a claim against the hospital is equivalent to a claim against the county. Our review of the record reveals that the Authority owns and operates the hospital. The Authority was incorporated in June 1956. In September 1989, the Authority was reincorporated under "The Health Care Authorities Act of 1982" ("the Act"), codified at § 22-21-310 et seq., Ala. Code 1975. The Act defines a health-care "authority" as a "public corporation organized, and any public hospital corporation reincorporated, pursuant to the provisions [of the Act]." § 22-21-311(2), Ala. Code 1975. The Alabama legislature provided for the creation of health-care authorities as public corporations in order to effectuate its intent
 "to promote the public health of the people of the state (1) by authorizing the several counties, municipalities, and educational institutions in the state effectively to form public corporations whose corporate purpose shall be to acquire, own and operate health care facilities, and (2) by permitting, with the consent of the counties or municipalities (or both) authorizing their formation, existing public hospital corporations to reincorporate hereunder. To that end, this article invests each public corporation so organized or reincorporated hereunder with all powers that may be necessary to enable it to accomplish its corporate purposes and shall be liberally construed in conformity with said intent."
§ 22-21-312, Ala. Code 1975.
On February 28, 1990, the Authority's articles of reincorporation were amended to state that its board of directors constituted the governing body of the Authority. The Act grants a board of directors all powers to act on behalf of a health-care authority. § 22-21-316, Ala. Code 1975. The Act specifically grants a health-care authority, acting through its board of directors, the power to "sue and be sued in its own name . . . and to defend suits and actions against it." § 22-21-318(2), Ala. Code 1975.
Notwithstanding the Authority's power to be sued, the Act specifically prohibits any obligation of a health-care authority from becoming an obligation of the county. Section 22-21-325
states:
 "All agreements and obligations undertaken, and all securities issued, by an authority shall be solely and exclusively an obligation of the authority and shall not create an obligation or debt of the state, any authorizing subdivision or any other county or municipality within the *Page 697 
meaning of any constitutional or statutory provision. The faith and credit of the state, any authorizing subdivision or any other county or municipality shall never be pledged for the payment of any securities issued by an authority; nor shall the state, any authorizing subdivision or any other county or municipality be liable in any manner for the payment of the principal of or interest on any securities of an authority or for the performance of any pledge, mortgage, obligation or agreement of any kind whatsoever that may be undertaken by an authority."
The hospital contends, in general terms, that a claim against it is analogous to a claim against a county. In support of this proposition, the hospital cites two cases from the United States Court of Appeals for the Eleventh Circuit, Askew v. DCH RegionalHealth Care Authority, 995 F.2d 1033 (11th Cir. 1993), andTodorov v. DCH Healthcare Authority, 921 F.2d 1438 (11th. Cir. 1991).
In Askew, supra, the plaintiffs brought an antitrust action against a health-care authority to prevent the authority from effectuating its proposed acquisition of a private health-care facility. The federal district court denied the health-care authority's motion for a summary judgment, and the authority appealed. The Eleventh Circuit Court of Appeals reversed the judgment in favor of the plaintiffs, holding that the health-care authority qualified as a "political subdivision of the state"for purposes of antitrust immunity and that, therefore, it was authorized by the state to acquire the private health-care facility. 995 F.2d at 1037.
In Todorov, supra, cited in Askew, supra, a physician brought an antitrust and civil-rights action against DCH, which had denied him certain privileges. The Eleventh Circuit Court of Appeals affirmed the federal district court's judgment finding that no antitrust violations or denial of due process had occurred. In reaching its holding, the Eleventh Circuit Court of Appeals concluded that the Act expressed a state policy that a hospital formed pursuant to the Act be permitted to engage in anticompetitive conduct that might otherwise run afoul of antitrust laws. Todorov, 921 F.2d at 1462. It is clear that the holdings in Askew and Todorov are limited to antitrust cases and are, therefore, not analogous to the situation presented in this case.
The Delloconos direct this court to Hospital Systems, Inc. v.Hill Rom, Inc., 545 So.2d 1324 (Ala. 1989). In HospitalSystems, a hospital invited bids for the alteration of its facility. Hospital Systems, an unsuccessful bidder, brought an action seeking an injunction to prohibit the execution of the contract between the hospital and the successful bidder. The trial court denied the request for an injunction, and Hospital Systems appealed. Our supreme court held that because the hospital was not a governmental entity, it was exempt from the Competitive Bid Law, § 41-16-50 et seq., Ala. Code 1975. Section41-16-50(a), a part of the Competitive Bid Law, provides, in part:
 "[A]ll expenditure of funds of whatever nature for labor, services or work, or for the purchase of materials, equipment, supplies or other personal property . . . made by . . . the county commissions [or] the governing bodies of the municipalities of the state . . . shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder. . . ."
(Emphasis added.) In reaching its holding that the hospital was exempt from the Competitive Bid Law, the court in Hospital *Page 698 Systems reasoned that the hospital was a
 "`health care authority,' incorporated pursuant to the provisions of Code 1975, § 22-21-310 et seq. It is `a separate entity from the state and from any local political subdivision, including a city or county within which it is organized' (Opinion of the Justices [No. 120], 254 Ala. 506, 511, 49 So.2d 175, 180 (1950)); therefore, it is not one of the governmental entities within the contemplation of the prohibitions of [the Competitive Bid Law]."
Hospital Systems, 545 So.2d at 1326 (emphasis added). See alsoPlay Fair Racing, Inc. v. Birmingham Racing Comm'n, 672 So.2d 8,14 (Ala. 1995) (holding that a racing commission, like a health-care authority, is a public corporation and not a government entity).
Applying the aforementioned principles and authorities to the facts of this case, we conclude that the Authority, which owns the hospital, is a public corporation having a distinct legal existence, separate and apart from that of the county for purposes of notice of claims. Therefore, the Delloconos were not required to give notice of their claims against the hospital to the county commission pursuant to § 6-5-20 and § 11-12-5, Ala. Code 1975.
In further support of our holding in this case, we note that inPoe v. Grove Hill Memorial Hospital Board, 441 So.2d 861, 864
(Ala. 1983), our supreme court held that where a municipality had "elected not to create a separate entity by choosing not to incorporate [its] hospital board," that board was organized and was operated as a part of that municipality, and claims against that board were therefore properly deemed subject to Alabama's nonclaims statutes, specifically §§ 11-47-23 and 11-47-192, Ala. Code 1975. By negative implication, under Poe, where a local government, such as Baldwin County, elects to create a separate entity, such as the Authority, that entity is outside the protection of nonclaims statutes such as §§ 6-5-20 and11-12-5, Ala. Code 1975. See also Willams v. Water Works GasBd. of Ashville, 519 So.2d 470, 472 (Ala. 1987) ("By incorporating the Board for the operation of the water works and gas systems, the City of Ashville has elected to create an entity separate from the municipality and outside the protection provided by the nonclaims statutes.").
Upon reviewing the record in a light most favorable to the Delloconos, as we are required to do, we conclude that the trial court erred in entering a summary judgment in favor of the hospital. Because we find that the Delloconos were not required to submit their claims to the Baldwin County Commission before filing their action against the hospital, we pretermit a discussion of whether the notice given to the hospital, rather than to the county commission, was sufficient to satisfy the notice requirements of § 6-5-20 and § 11-12-8, Ala. Code 1975.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] A "Thera-Ball" is an inflatable exercise ball.
[2] This action was initially brought against Thomas Hospital, Thomas Health and Fitness Center, Hygienic Corporation, and several fictitiously named defendants. The Delloconos' complaint was later amended to substitute Keithco Corporation for one of the fictitiously named defendants. The summary judgment appealed from pertains solely to Thomas Hospital.