This appeal concerns the propriety of the retention, by an emergency communication district ("ECD"), of certain emergency-telephone-service charges assessed by the ECD under Title 11, Chapter 98, Ala. Code 1975.
In 1984, the Legislature enacted Act No. 84-369, Ala. Acts 1984, which pertains to emergency telephone service; that Act was subsequently codified at Title 11, Chapter 98, Ala. Code 1975. That legislation, among other things, established the digits "911" as "the primary emergency telephone number for use" in ECDs. Act No. 84-369, § 2. Pursuant to authority granted by the Legislature in § 11-98-2, Ala. Code 1975, the governing body of Choctaw County authorized the creation of the Choctaw County Emergency Communication District ("CCECD"), a political and legal subdivision of the state.
In June 1996, via a referendum, the electorate of Choctaw County (which had a population of less than 25,000 according to the 1990 census) permitted CCECD to levy an emergency-telephone-service charge of up to $2 per month per business or residential telephone line. That referendum, and CCECD's subsequent levying of a monthly $2-per-line emergency-telephone-service charge, was authorized under §11-98-5(a)(1), Ala. Code 1975, which provides, in pertinent part:
 "[I]n counties with populations of less than 25,000 as determined by the most recent population census, the board of commissioners may, when so authorized by a vote of a majority of the persons voting within the district, in accordance with law, levy an emergency telephone service charge in an amount not to exceed *Page 935 
two dollars ($2). . . . The district shall have service on line no later than 36 months from the start of collections or suspend all collections until the district provides the service and shall refund all collections made during this 36 month period of time."
(Emphasis added.)
After the referendum, CCECD notified several local telephone carriers that they were to begin collecting the $2 service charges levied against telephone customers within Choctaw County. The record indicates that those carriers began collecting the service charges in August 1996, although moneys collected from local telephone customers were apparently not transferred to CCECD until late October 1996. CCECD then hired a director who began planning for the provision of enhanced universal emergency-number service, or "E911" emergency telephone service, within Choctaw County. Under Ala. Code 1975, § 11-98-1(3), E911 service is "a telephone exchange communications service whereby a public safety answering point (PSAP) designated by the customer may receive telephone calls dialed to the telephone number 911"; that service "includes lines, facilities, and equipment necessary for answering, transferring, and dispatching public emergency telephone calls originated by persons within the serving area who dial 911."
It may safely be said that implementing E911 service proved to be a complex endeavor for CCECD, involving obtaining a complete list of telephone customers within Choctaw County; assigning each telephone customer within Choctaw County a numerical address; and acquiring properly functioning radio, telephone, and computer equipment. Because of various problems that arose in performing those tasks, CCECD's E911 service did not begin testing until November 1999 and did not become fully operational until March 13, 2000, more than 36 months after emergency-telephone-service charges were first collected from telephone customers within Choctaw County.
On the day that E911 service became available throughout Choctaw County, two individuals[1] from whom emergency-telephone-service charges had been collected, acting on their own behalf and on behalf of a class of similarly situated persons, sued CCECD and its board of directors ("the Board")[2] seeking a refund of all emergency-telephone-service charges collected by CCECD. The defendants answered the complaint, denying liability and asserting a number of affirmative defenses, including immunity from liability and the plaintiffs' alleged failure to comply with statutes requiring notice to counties with respect to claims asserted against counties.
The defendants filed a motion for a summary judgment and various evidentiary exhibits; in their summary-judgment motion, the defendants presented arguments concerning their immunity and notice defenses and contended that § 11-98-5(a)(1) did not compel a refund of the emergency-telephone-service charges CCECD had collected. The plaintiffs filed a response in opposition to the defendants' summary-judgment motion and filed their own motion for a partial summary judgment as to the issue of the defendants' *Page 936 
liability. On September 2, 2003, the trial court entered a seven-page summary judgment in favor of the defendants, concluding that CCECD had "substantially complied" with the requirements of § 11-98-5(a)(1) so as to warrant its retention of all of the emergency-telephone-service charges it had collected. The plaintiffs appealed to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Rule 56(c)(3), Ala. R. Civ. P., provides that a trial court, upon a proper motion, shall enter a summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In this case, the pertinent facts are undisputed; therefore, we review the trial court's application of the law to those facts to determine whether the defendants were entitled to a judgment as a matter of law. See Williams v. Baptist Health Sys., Inc., 857 So.2d 149,151 (Ala.Civ.App. 2003) (citing Carpenter v. Davis,688 So.2d 256, 258 (Ala. 1997)). We review the trial court's judgment under a de novo standard. Williams, 857 So.2d at 151 (citing Hippsv. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025
(Ala.Civ.App. 1993)).
The plaintiffs contend on appeal, as they did in the trial court, that CCECD did not bring E911 service in Choctaw County "on line" within 36 months of when the emergency-telephone-service charges were first collected; they argue that CCECD must therefore refund all such charges collected before the service was first activated. Substantial evidence supports the plaintiffs' position that the emergency-telephone-service charges were first collected from telephone customers in Choctaw County in August 1996, within two months of the E911 referendum in that county. Thus, under §11-98-5(a)(1), it was the duty of CCECD to "have service on line" no later than 36 months after August 1996, i.e., before the conclusion of August 1999.
It is undisputed that CCECD did not begin providing E911 service to telephone customers in Choctaw County until March 13, 2000. However, CCECD contends, and the trial court agreed, that the term "on line" in § 11-98-5(a)(1) was ambiguous and should be interpreted to mean "in progress" or "ongoing" so as to allow CCECD's having had equipment in place and its having experimented with a central call system within 36 months of August 1996 to amount to substantial compliance with the statute. The existence of an ambiguity as to the phrase "on line" is a critical issue, because although a court may resort to rules of statutory construction to ascertain and effectuate legislative intent when a statutory term is ambiguous, such rules do not apply when "statutory language is plain and unambiguous" and "its meaning [is] obvious." Robinson v. City of Montgomery, 485 So.2d 695,696 (Ala. 1986).
We cannot agree with the proposition that there is a significant ambiguity in Ala. Code 1975, § 11-98-5(a)(1), which provides that "[t]he district shall have service on line no later than 36 months from the start of collections or suspend all collections until the district provides the service and shall refund all collections made during this 36 month period of time" (emphasis added). The Oxford English Dictionary notes that when the term "on line" is written as two words, it is equivalent to the term "on stream," which means "in or into productive or useful operation." X Oxford English Dictionary, pp. 817, 822 (2d ed. 1989). Thus, the Legislature's intent is clear: if an emergency-telephone-service charge is collected by an ECD, such as CCECD, the governing board of *Page 937 
the collecting ECD may properly use funds derived from such charges, but enhanced universal emergency number service must be established throughout the geographic area served by the ECD within 36 months from the time that those collections start.
In this case, the E911 system designed and installed by CCECD was not in "productive" or "useful" operation so as to be accessible by telephone customers in Choctaw County within 36-months of the first collection of emergency-telephone-service charges from telephone customers in Choctaw County; rather, that system began operation several months thereafter. We acknowledge that the 36-month period envisioned by the Legislature for bringing an E911 system "on line" after emergency-telephone-service charges are first collected within an ECD may present hardships for governing boards of ECDs located in remote, rural areas, and that a greater period of time might well have been appropriately provided for in § 11-98-5(a)(1) for such ECDs; similarly, the Legislature might well have mandated only a suspension of collection of such charges rather than directing a full refund if the 36-month deadline was not met. That said, however, it is well-settled that "[a]ll questions of propriety, wisdom, necessity, utility, and expediency of legislation are exclusively for the Legislature," Johnson v. Price,743 So.2d 436, 438 (Ala. 1999), and we may not properly question the wisdom of that body here.
We conclude that because the E911 system in Choctaw County was not fully operational within 36 months from the initial collection of emergency-telephone-service charges within the county, the trial court erred in concluding that CCECD had, as a matter of law, substantially complied with § 11-98-5(a)(1). We now address the defendants' claimed alternative rationales upon which, they contend, this court should affirm various aspects of the trial court's summary judgment despite that error of law.See Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala. 1988) (trial court's judgment is due to be affirmed if it is supported by any valid legal ground).
The defendants contend that the plaintiffs' claim against CCECD is barred under §§ 6-5-20 and 11-12-5, Ala. Code 1975, because the plaintiffs failed to present their claim to the Choctaw County Commission. However, we note that all ECDs authorized to be created by the governing bodies of cities and counties under §11-98-1 et seq., Ala. Code 1975, are "political and legal subdivisions of the state, with power to sue and be sued in their corporate names." Ala. Code 1975, § 11-98-2 (emphasis added). In other words, although CCECD was created by a county commission, the plaintiffs' claim against it is not a claims against a "county" so as to require compliance with the statutory presentment procedure. See Williams v. Water Works Gas Bd. ofAshville, 519 So.2d 470, 472 (Ala. 1987) ("By incorporating the Board for the operation of the water works and gas systems, the City of Ashville has elected to create an entity separate from the municipality and outside the protection provided by the non-claims statutes"); accord, Dellocono v. Thomas Hosp.,894 So.2d 694, 698 (Ala.Civ.App. 2004).
The defendants also contend that the plaintiffs' claim is barred by § 11-98-9, Ala. Code 1975, which provides, in pertinent part, that no ECD or director thereof, except where willful or wanton misconduct is shown, "shall be liable for any damages in a civil action . . . resulting from death, injury, or loss . . . incurred by any person in connection with establishing, developing, implementing, maintaining, operating, and otherwise providing wireless *Page 938 enhanced 911 service in compliance with the requirements established by [Federal Communications Commission] Order 94-102" (emphasis added). Although the term "wireless enhanced 911 service" is not specifically defined in § 11-98-9, the Legislature's use of the term "wireless" indicates that it is referring to the provision of enhanced 911 services (such as selective routing based upon a caller's geographic location) to non-corded radio-telephones (i.e., "cellular" telephones) within the Commercial Mobile Radio Service established under47 U.S.C. § 151 et seq., not to conventional landline telephone units. See § 11-98-6(3), Ala. Code 1975. In any event, the plaintiffs' claim against the defendants in this case is for a refund of charges that must, pursuant to § 11-98-5(a)(1), be refunded to the plaintiffs based upon a failure to bring E911 service in Choctaw County "on line" within 36 months of when emergency-telephone-service charges were first collected, not a claim "resulting from death, injury, or loss" incurred because of any particular act or omission of CCECD or the Board in the process of establishing that service. We thus conclude that §11-98-9 does not bar the particular claim brought by the plaintiffs.
The defendants further posit that the plaintiffs' claim against the Board is barred, citing § 6-5-336, Ala. Code 1975, "The Volunteer Service Act." That section provides immunity from civil liability to "volunteers," i.e., persons who perform services for governmental entities, with respect to those persons' acts or omissions resulting in damage or injury, so long as the damage or injury was not caused by willful or wanton misconduct. Although we agree with the plaintiffs that § 6-5-336 does not apply to the specific claim made against the Board in this case, we agree with the defendants that the Board is not liable to the plaintiffs. As we have noted, Ala. Code 1975, § 11-98-5(a)(1), provides that "[t]he district . . . shall refund all collections" of emergency-telephone-service charges if service is not provided within 36 months of when the charges are first collected; it is thus the responsibility of an ECD, not a ECD's governing board or individual members of that board, to refund emergency-telephone-service charge collections under the conditions specified in § 11-98-5(a)(1). In essence, the Board was improperly joined as a defendant, and the summary judgment as to the Board was therefore proper.
Based upon the foregoing facts and authorities, the summary judgment in favor of CCECD is reversed. The summary judgment in favor of the Board is affirmed. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
[1] Chalonde Lassiter and Peggy Turner were originally named as plaintiffs, but Joseph W. Hutchinson, Jr., replaced Lassiter as a plaintiff in August 2001.
[2] Although § 11-98-4(a), Ala. Code 1975, refers to the governing board of an ECD as being a "board of commissioners," there is no dispute in this case that the Board, despite being called a "Board of Directors," serves as the governing board of CCECD.